No. 23-1802

_____

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

CITY OF CHARLESTON,

*Plaintiff-Appellee*,

v.

BRABHAM OIL COMPANY, INC.; COLONIAL GROUP, INC.; ENMARK STATIONS, INC.; COLONIAL PIPELINE COMPANY; PIEDMONT PETROLEUM CORP.; EXXON MOBIL CORP.; EXXONMOBIL OIL CORP.; SHELL PLC; SHELL USA, INC.; SHELL OIL PRODUCTS COMPANY LLC; CHEVRON CORP.; CHEVRON U.S.A. INC.; BP PLC; BP AMERICA, INC.; MARATHON PETROLEUM CORP.; MARATHON PETROLEUM COMPANY LP; SPEEDWAY LLC; MURPHY OIL CORP.; MURPHY OIL USA, INC.; HESS CORP.; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66; PHILLIPS 66 COMPANY

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the District of South Carolina, No. 2:20-cv-03579-RMG
(The Honorable Richard M. Gergel)

_____

**DEFENDANTS-APPELLANTS' OPENING BRIEF**

_____

Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
thungar@gibsondunn.com

Theodore J. Boutrous, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229-7000
tboutrous@gibsondunn.com

*Counsel for Defendants-Appellants Chevron Corporation and Chevron U.S.A. Inc.*
[*Additional counsel listed on signature page*]

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellants submit the following statement:

BP p.l.c., a publicly traded corporation organized under the laws of England and Wales, has no parent corporation, and there is no publicly held corporation that owns 10% or more of BP p.l.c.'s stock.

BP America Inc. is a 100% wholly owned indirect subsidiary of BP p.l.c., and no intermediate parent of BP America Inc. is a publicly traded corporation.

Brabham Oil Company, Inc. has no parent corporation, and no publicly held company holds 10% or more of its stock.

Chevron Corporation has no parent corporation, and no publicly held company holds 10% or more of its stock.

Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

Colonial Group, Inc. has no parent corporation, and no publicly held company holds 10% or more of its stock.

Colonial Pipeline Company is a wholly owned subsidiary of Colonial Enterprises, Inc. KKR-Keats Pipeline Investors L.P., is a partial owner

i

of Colonial Enterprises, Inc. and is a limited partnership between KKR & Co., L.P. and the National Pension Service of Korea. Colonial does not know what percentage of KKR-Keats is owned by each partner. Through its participation in the partnership, KKR & Co., a publicly held corporation, has a financial interest in the outcome of this proceeding. Shell Pipeline Company LP is also a partial owner of Colonial Enterprises, Inc., and is an indirect subsidiary of Shell plc (*f/k/a* Royal Dutch Shell plc), a publicly held company.

Enmark Stations, Inc. is a wholly owned subsidiary of Colonial Group, Inc.

ConocoPhillips has no parent corporation, and no publicly held company holds 10% or more of its stock.

ConocoPhillips Company is a wholly owned subsidiary of ConocoPhillips.

Exxon Mobil Corporation has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

ExxonMobil Oil Corporation's corporate parent is Mobil Corporation, which owns 100% of ExxonMobil Oil Corporation's stock. Mobil Corporation, in turn, is wholly owned by Exxon Mobil Corporation.

Hess Corporation has no parent corporation, and no publicly held corporation holds 10% or more of its stock.

Marathon Petroleum Corporation is a publicly held corporation and does not have a parent corporation.

Marathon Petroleum Company LP is not a publicly traded company. Its partners are Marathon Petroleum Corporation, Giant Industries, Inc., and MPC Investment LLC.

Murphy Oil Corp. has no parent corporation, and no publicly held company holds 10% or more of its stock.

Murphy Oil USA, Inc. is a Delaware corporation and is not publicly traded. Murphy Oil USA, Inc. is wholly owned by Murphy USA Inc., a publicly traded Delaware Corporation.

Phillips 66 has no parent corporation. The Vanguard Group is the only shareholder owning 10% or more of Phillips 66.

Phillips 66 Company is wholly owned by Phillips 66.

Piedmont Petroleum Corp. has no parent corporation, and no publicly held company holds 10% or more of its stock.

Shell plc (*f/k/a* Royal Dutch Shell plc) has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Shell USA, Inc. (*f/k/a* Shell Oil Company) is a wholly owned subsidiary of Shell Petroleum Inc., whose ultimate corporate parent is Shell plc (*f/k/a* Royal Dutch Shell plc).

Shell Oil Products Company LLC's member is Shell USA, Inc. (*f/k/a* Shell Oil Company), whose ultimate corporate parent is Shell plc (*f/k/a* Royal Dutch Shell plc), a publicly held UK company.

Speedway LLC is an indirect subsidiary of Seven & i Holdings, Co., Ltd. Seven & i Holdings Co., Ltd., through itself or its subsidiaries, owns more than 10% of Speedway LLC's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..............................................i

TABLE OF AUTHORITIES ...................................................... vii

INTRODUCTION.................................................................1

JURISDICTIONAL STATEMENT ..................................................5

ISSUES PRESENTED...........................................................6

STATEMENT OF THE CASE ....................................................7

STANDARD OF REVIEW ......................................................11

SUMMARY OF THE ARGUMENT.................................................11

ARGUMENT...................................................................14

I.    The Only Non-Diverse Defendants Are Fraudulently Joined......14

    A.    Defendants' right of removal to federal court cannot be defeated by fraudulent joinder...............................................15

    B.    Based on both the pleadings and the record, Plaintiff has no possibility of establishing a claim against Brabham or Piedmont. .........................................................18

        1.    According to its own allegations, Plaintiff has no possibility of establishing a claim against Brabham or Piedmont. ...............................................19

        2.    The record as a whole further confirms that Plaintiff's claims against Piedmont and Brabham are not viable. ..............................................25

    C.    The district court erred in finding Plaintiff's disinformation theory viable against Brabham and Piedmont based on bare, unsupported allegations contradicted by the undisputed factual record.....................31

II.   These Actions Are Removable Under The Federal Officer Removal Statute And *Grable*..............................................35

III.  Defendants Preserve Additional Arguments That Plaintiff's Claims Arise Under Federal Law. ................................................40

CONCLUSION ............................................................................41

REQUEST FOR ORAL ARGUMENT .......................................41

STATUTORY ADDENDUM ......................................................49

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*,
 903 F.2d 1000 (4th Cir. 1990) ............................................................16

*Barlow v. Colgate Palmolive Co.*,
 772 F.3d 1001 (4th Cir. 2014) ............................................................15

*Boss v. Nissan N. Am., Inc.*,
 228 F. App'x 331 (4th Cir. 2007) .......................4, 18, 26, 28, 29, 32, 34

*Boyer v. Snap-On Tools Corp.*,
 913 F.2d 101 (3d Cir. 1990) ................................................................17

*BP P.L.C. v. Mayor & City Council of Baltimore*,
 141 S. Ct. 1532 (2021)..........................................................................5

*Carter v. Hitachi Koki U.S.A., Ltd.*,
 445 F. Supp. 2d 597 (E.D. Va. 2006)..................................................30

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)............................................................................33

*Charleston Cnty. Sch. Dist. v. Laidlaw Transit, Inc.*,
 559 S.E.2d 362 (S.C. Ct. App. 2001) ..................................................20

*Chicago, R.I. & P. Ry. Co. v. Schwyhart*,
 227 U.S. 184 (1913)......................................................................17, 30

*Coyne v. Am. Tobacco Co.*,
 183 F.3d 488 (6th Cir. 1999) ..............................................................17

*Crowe v. Coleman*,
 113 F.3d 1536 (11th Cir. 1997) ..........................................................18

*Dixon v. CSX Transp., Inc.*,
 990 F.2d 1440 (4th Cir. 1993) ............................................................23

*Evans v. K-VA-T Food Stores, Inc.*,
  2013 WL 1639414 (S.D. W. Va. Apr. 16, 2013) ...................................29

*Filla v. Norfolk S. Ry. Co.*,
  336 F.3d 806 (8th Cir. 2003) ...............................................................17

*Flores v. Ethicon*,
  563 F. App'x 266 (4th Cir. 2014) ...........................................20, 24, 31

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) ...............................................................33

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mftg.*,
  545 U.S. 308 (2005)..............................................................6, 36, 39

*Hartley v. CSX Transp., Inc.*,
  187 F.3d 422 (4th Cir. 1999) ...............................................................34

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999)..............................................................................37

*Johnson v. Am. Towers, LLC*,
  781 F.3d 693 (4th Cir. 2015) ...............................................................28

*Kueilin Lu Tu v. U-Haul Co. of S.C., Inc.*,
  333 F. Supp. 3d 576 (D.S.C. 2018) ......................................................29

*Legg v. Wyeth*,
  428 F.3d 1317 (11th Cir. 2005) ....................................................15, 18

*Linnin v. Michielsens*,
  372 F. Supp. 2d 811 (E.D. Va. 2005).............................................15, 30

*Marshall v. Manville Sales Corp.*,
  6 F.3d 229 (4th Cir. 1993) ...................................................................16

*Martin v. Norfolk & W. Ry. Co.*,
  43 F.2d 293 (4th Cir. 1930) .................................................................17

*Mayes v. Rapoport*,
  198 F.3d 457 (4th Cir. 1999) .......................................11, 18, 26, 32, 34

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022)............................................................2, 39

*McFadden v. Fed. Nat'l Mortg. Ass'n*,
  525 F. App'x 223 (4th Cir. 2013)..........................................................24

*McKinney v. Bd. of Tr. of Mayland Cmty. Coll.*,
  955 F.2d 924 (4th Cir. 1992) ..........................................................15, 16

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001) ..............................................................33

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...............................................................................40

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)...............................................................................23

*Pacheco de Perez v. AT&T Co.*,
  139 F.3d 1368 (11th Cir. 1998) ............................................................33

*Paradis v. Charleston Cnty. Sch. Dist.*,
  819 S.E.2d 147 (S.C. Ct. App. 2018) ....................................................21

*Phila. Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)...............................................................................40

*In re Prempro Prods. Liab. Litig.*,
  591 F.3d 613 (10th Cir. 2010) ..............................................................17

*Putnam v. Wake Christian Acad.*,
  2019 WL 8375930 (D.S.C. Nov. 25, 2019)............................................24

*Sawyer v. Foster Wheeler LLC*,
  860 F.3d 249 (4th Cir. 2017) ................................................................37

*Schur v. L.A. Weight Loss Ctrs., Inc.*,
  577 F.3d 752 (7th Cir. 2009) ................................................................17

*Stoney Marine Int'l Ltd. v. Arthur J. Gallagher & Co.*,
  2016 WL 7334862 (D.S.C. Dec. 19, 2016)............................................34

ix

*Talbott v. Padgett*,
    8 S.E. 845 (S.C. 1889) .........................................................................20

*Travis v. Irby*,
    326 F.3d 644 (5th Cir. 2003) ...........................................................17

*Wecker v. Nat'l Enameling & Stamping Co.*,
    204 U.S. 176 (1907)...........................................................................16

*Wilson v. Republic Iron & Steel Co.*,
    257 U.S. 92 (1921)......................................................................25, 31

**Statutes**

28 U.S.C. § 1291 ...................................................................................5

28 U.S.C. § 1331 ...................................................................................5

28 U.S.C. § 1332(a).......................................................................3, 6, 9

28 U.S.C. § 1332(d)................................................................................5

28 U.S.C. § 1367(a)................................................................................5

28 U.S.C. § 1441(a)................................................................................5

28 U.S.C. § 1441(b)..............................................................................15

28 U.S.C. § 1442 ...................................................................................5

28 U.S.C. § 1442(a)........................................................................12, 36

28 U.S.C. § 1442(a)(1)...................................................................6, 36, 37

28 U.S.C. § 1446 ...................................................................................5

28 U.S.C. § 1446(b)(2)(A).......................................................................5

28 U.S.C. § 1447(d)................................................................................5

43 U.S.C. § 1349(b)................................................................................5

43 U.S.C. § 1349(b)(1)......................................................................7, 41

**Treatises**

6 Am. Jur. 2d *Assocs. and Clubs* § 29.........................................................23

14C Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3723.1 ................16, 17

## INTRODUCTION

Plaintiff, the City of Charleston, seeks to impose liability for global climate change on a select group of energy companies that it alleges are among those responsible for supplying the world with the oil and gas products that governments, businesses, and consumers have demanded and used over many decades.  Plaintiff alleges that Defendants "have known for decades" about their products' impact on climate change, but "nevertheless engaged in a coordinated, multi-front effort" to deceive the public as to these effects.  J.A.0137.  Despite the obvious national and international implications of Plaintiff's claims, and the fact that it alleges injuries arising from cumulative, worldwide emissions, Plaintiff tried to evade federal jurisdiction by filing suit in state court, by pleading nominally state-law claims, and by naming two small, family-owned South Carolina companies as Defendants.  But Plaintiff cannot use artful pleading to eliminate federal jurisdiction.  Plaintiff has no possibility of recovering for its alleged injuries from the two sham Defendants from South Carolina, and the federal courts therefore have diversity jurisdiction pursuant to the doctrine of fraudulent joinder.  Moreover, Plaintiff cannot obscure the fact that a significant portion of Defendants' actions that

purportedly caused Plaintiff's injuries were performed under the direction, supervision, and control of the United States government, and thus Defendants have a right to remove the case to federal court under the federal officer removal statute.

In the past few years, several courts—including this one—have considered similar lawsuits raising related jurisdictional issues. Two of those cases are currently pending before this Court: *Anne Arundel County v. BP P.L.C.*, No. 22-2082, and *City of Annapolis v. BP P.L.C.*, No. 22-2101, which are scheduled for consolidated oral argument in December 2023. And this Court previously decided some of the issues presented in this appeal in *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022) ("*Baltimore IV*"). Defendants-Appellants respectfully preserve for further review their arguments on certain issues addressed in *Baltimore IV*, and present additional arguments for removal based on federal officer removal and the necessary resolution of contested First Amendment issues—bases for removal that are also at issue in *Anne Arundel* and *Annapolis*.

Separate and apart from those issues, however, this appeal raises the unique issue of fraudulent joinder. Despite largely copying the same

2

complaint that has been filed in two dozen similar climate change-related lawsuits across the country, Plaintiff tacked on two non-diverse small family-owned businesses—Brabham Oil Company ("Brabham") and Piedmont Petroleum Corp. ("Piedmont")—in an attempt to defeat federal diversity jurisdiction under 28 U.S.C. § 1332(a).  It is telling that in the *more than twenty* climate change-related cases brought by States and municipalities across the country—many by the same outside counsel— this is the *only* action in which Brabham and Piedmont are named as Defendants.

The inclusion of these Defendants here is a transparent attempt to avoid federal court.  Indeed, the Complaint does not include even one specific allegation about either Brabham or Piedmont that could possibly tie them to any alleged misrepresentation or deception.  Plaintiff does not allege in its Complaint that Brabham or Piedmont made a single alleged misstatement or engaged in a single act of deception.  That should be dispositive.  But if that were not enough, Brabham and Piedmont sub- mitted *unrebutted* declarations confirming that they played no role in any marketing campaign relating to greenhouse gases, global warming, or the science of climate change.  Accordingly, there is no possible way that

these South Carolina Defendants could be held liable to Plaintiff for alleged deceptive misstatements—let alone any omissions or failure to warn—in any marketing materials about greenhouse gases or global climate change; in fact, the undisputed facts show that Brabham and Piedmont *never* engaged in such marketing campaigns at all.

The district court, however, erroneously assumed that it was powerless to consider these unrebutted declarations—even though, by the district court's own description, they "refute[d]" Plaintiff's allegations, J.A.1562. That was error. District courts have the power, and even the duty, to consider unrebutted declarations when determining whether certain defendants were fraudulently joined in an attempt to evade federal jurisdiction. *See, e.g.*, *Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 336 (4th Cir. 2007) (explaining that "in deciding fraudulent joinder," "the district court should consider affidavits" and when the affidavits "are undisputed by the Plaintiffs, the court cannot resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint"). Under the proper standard, Plaintiff has no possibility of

establishing any cause of action against Brabham or Piedmont, and removal is therefore appropriate based on complete diversity among the parties.[1]

## JURISDICTIONAL STATEMENT

Defendants timely removed this action to the United States District Court for the District of South Carolina on October 9, 2020. 28 U.S.C. § 1446(b)(2)(A); J.A.0001. The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332(d), 1367(a), 1441(a), 1442, and 1446, and 43 U.S.C. § 1349(b).

On July 5, 2023, the district court granted Plaintiff's motion to remand, J.A.1551, and, on August 2, 2023, Defendants timely filed a notice of appeal under 28 U.S.C. §§ 1291 and 1447(d), J.A.1565.

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1447(d) to review the district court's entire remand order. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021).

---

[1]     To be clear, Defendants maintain that, on the merits, Plaintiff has not stated a claim against any of the Defendants.

5

## ISSUES PRESENTED

**I.** Whether the district court had jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff fraudulently joined Brabham and Piedmont. *See* J.A.1560–1562.

**II.** Whether the district court was obligated to consider Defendants' unrebutted evidence that there is no possibility of recovery against Brabham and Piedmont, thus demonstrating that those two Defendants were fraudulently joined.

**III.** Whether the district court had jurisdiction under 28 U.S.C. § 1442(a)(1) because Plaintiff's claims are "for or relating to" injuries allegedly caused by emissions from oil and gas, a substantial amount of which Defendants produced at the direction of federal officers. *See* J.A.1556–1559.

**IV.** Whether the district court had removal jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), for claims raising substantial and disputed federal questions, given that Plaintiff's claims include federal constitutional elements. *See* J.A.1559–1560.

6

**V.** Whether the district court had subject-matter jurisdiction because Plaintiff's claims for injuries allegedly stemming from global climate change necessarily and exclusively arise under federal law. *See* J.A.1555–1556.

**VI.** Whether Plaintiff's claims "aris[e] out of, or in connection with" Defendants' operations on the Outer Continental Shelf, 43 U.S.C. § 1349(b)(1). *See* J.A.1554–1555.[2]

[An addendum of key statutory provisions is included at the end of the brief.]

## STATEMENT OF THE CASE

**I.** Plaintiff, the City of Charleston, filed suit in South Carolina state court, alleging that "the normal or foreseeable use of [Defendants'] fossil fuel products . . . was a direct and proximate cause of [Plaintiff's] injuries and a substantial factor in bringing about the harms suffered by [Plaintiff]." J.A.0266–0267. According to Plaintiff, Defendants' extraction, production, marketing, and sale of their oil and gas "have contributed substantially to the buildup of $CO_2$ in the atmosphere that drives

---

[2] *Baltimore IV* decided the fifth and sixth issues, and Defendants respectfully preserve them for further review.

7

global warming and its physical, environmental, and socioeconomic consequences." J.A.0140. Plaintiff alleges that these environmental changes have been the "actual and proximate" causes of "severe harms and losses," including "injury or destruction of City-owned or operated facilities and property deemed critical for operations, utility services, and risk management"; "increased planning and preparation costs for community adaptation and resiliency to global warming's effects"; and "increased costs associated with public health impacts." J.A.0250. Plaintiff asserts causes of action for public and private nuisance, trespass, strict liability for failure to warn, negligent failure to warn, and violations of the South Carolina Unfair Trade Practices Act. J.A.0256–0272. Plaintiff seeks, among other things, compensatory and punitive damages, disgorgement of profits, and equitable relief to abate the alleged nuisances. J.A.0272.

II. Defendants are 24 companies. Two of them are small, family-owned South Carolina corporations, Brabham and Piedmont. The others are transnational companies domiciled outside of South Carolina. Nearly all the relevant conduct alleged by Plaintiff (none of which involves Brabham and Piedmont) occurred outside of South Carolina, with a significant

8

portion occurring in foreign countries or on federal land, including the Outer Continental Shelf. *See* J.A.0154–0155, J.A.0238–0239.

Defendants' notice of removal raised various grounds for removal, including that Plaintiff's Complaint: (1) is removable based on diversity jurisdiction, 28 U.S.C. § 1332(a), given Plaintiff's fraudulent joinder of the non-diverse named Defendants, Brabham and Piedmont; (2) alleges actions taken pursuant to a federal officer's directions; and (3) "raises disputed and substantial federal questions." J.A.0048–0109, J.A.0125–0130.

The district court granted Plaintiff's motion to remand. J.A.1563. The district court concluded that most of Defendants' bases for removal were foreclosed by *Baltimore IV*, which had affirmed remand of similar climate change-related claims in another case, J.A.1554–1555, and the court borrowed most of its remaining reasoning from the District of Maryland's decision remanding similar cases in *Anne Arundel County v. BP P.L.C.* and *City of Annapolis v. BP P.L.C.*, J.A.1558, J.A.1560. As for federal officer removal, the court followed the *Anne Arundel* court in ruling that Defendants failed to plausibly assert that the alleged misrepresentations and failure to warn highlighted by

9

Plaintiff in its briefing were acts carried out for or in relation to official authority. J.A.1557–1559. Reasoning that the expanded factual record that Defendants presented in this case—relative to the record in *Baltimore IV*—did not address this issue, the court rejected federal officer removal. J.A.1558–1559. The district court also rejected *Grable* jurisdiction, concluding that Plaintiff's asserted state-law tort claims do not "necessarily raise" First Amendment issues. J.A.1559–1560. Finally, the district court rejected Defendants' argument for diversity jurisdiction based on the fraudulent joinder of Defendants Brabham and Piedmont. J.A.1560–1562. The court declined to "act as a fact finder in deciding jurisdictional questions," and accordingly assumed that it could not consider Brabham's and Piedmont's sworn declarations explaining that they were in no way involved in any alleged misinformation campaign and instead accepted Plaintiff's bald assertion that Piedmont was "connect[ed]" to the Global Climate Coalition ("GCC"), which Plaintiff alleges "participate[d] in the deceptive campaigns." J.A.1561–1562.

**III.** On August 2, 2023, Defendants timely noticed their appeals, J.A.1565.

10

## STANDARD OF REVIEW

This Court "review[s] de novo questions of subject matter jurisdiction, including those relating to the propriety of removal and 'fraudulent joinder.'" *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999).

## SUMMARY OF THE ARGUMENT

**I.**   The district court erred in holding that Brabham and Piedmont were not fraudulently joined.

The district court rejected Defendants' fraudulent joinder argument by reasoning that Plaintiff's "disinformation theory" was theoretically viable against Brabham and Piedmont. J.A.1561. The district court asserted that "the Complaint connects Piedmont to the Global Climate Coalition," although no connection sufficient to permit the imposition of vicarious liability is actually pleaded. J.A.1561. The district court also erroneously declined even to consider the uncontested evidence submitted by Defendants, namely, Brabham's and Piedmont's declarations directly refuting the allegations made against them. For example, Piedmont's declaration made clear that Piedmont has never "participated in a meeting of the Global Climate Coalition or taken any action on behalf of that organization," nor "played any role in any alleged disinformation

11

campaign of the Global Climate Coalition." J.A.1546. Piedmont also attested that it "has never engaged in a 'marketing campaign' of any kind, much less a marketing campaign relating to greenhouse gases." J.A.1546. While the court acknowledged this unrefuted evidence, J.A.1562, it concluded that it could not "act as a fact finder" and therefore refused to consider this evidence.

The district court should not have deferred blindly to Plaintiff's allegations. As this Court has explained, district courts must consider, in light of the full record, whether the plaintiff has a possibility of establishing a cause of action against the non-diverse defendant, which is clearly not the case here.

**II.** The district court also erred in holding that Plaintiff's claims were not removable under the federal officer removal statute, 28 U.S.C. § 1442(a), and in denying removal under *Grable*.

The district court assumed that this Court's decision in *Baltimore IV* required rejection of Defendants' federal officer removal arguments here, but the defendants in *Baltimore IV* did not introduce—and thus this Court did not confront—the much more extensive evidentiary record presented here, or Defendants' argument that the "relatedness" analysis

12

requires courts to focus on the nature of the plaintiff's theory of *injury*. In addition, removal under *Grable* is appropriate here because Plaintiff's claims raise substantial, disputed issues of federal law—specifically, that Plaintiff's allegations of disinformation campaigns target constitution- ally protected speech and therefore require Plaintiff to prove affirmative federal-law elements imposed by the First Amendment. Removal is thus appropriate.

The record in this case fully supports removal on these grounds, which are fully briefed before this Court in *Anne Arundel*, No. 22-2082, and *Annapolis*, No. 22-2101. The outcome of those appeals will be dis- positive in this case on those issues.

**III.**   Finally, Defendants respectfully preserve their arguments that Plaintiff's claims (a) arise under federal law because federal law nec- essarily and exclusively governs claims seeking relief for harms allegedly stemming from interstate and international pollution; (b) raise and de- pend on the resolution of disputed, substantial federal questions and are therefore removable under *Grable*; and (c) arise out of, or in connection with, operations on the Outer Continental Shelf.

13

## ARGUMENT

## I.     The Only Non-Diverse Defendants Are Fraudulently Joined.

This case is removable based on diversity jurisdiction because none of the properly joined Defendants shares South Carolina citizenship with Plaintiff. Plaintiff named two small, family-owned South Carolina companies—Brabham and Piedmont—as Defendants in this suit, but that was a transparent effort to defeat federal jurisdiction based on complete diversity. Plaintiff's Complaint includes only the vaguest and most attenuated allegations related to these companies. Indeed, among the two dozen nearly identical climate change suits brought across the country, this is the only one to name these two Defendants. And for good reason: they are not involved in any of the alleged conduct at issue. Instead, they have been sued in a tactical attempt to evade federal jurisdiction. But Plaintiff has no possibility—let alone a reasonable one—of maintaining its cause of action against these Defendants in state court. Nor does it have any real intention of obtaining a judgment against them. This is a clear case of fraudulent joinder.

### A. Defendants' right of removal to federal court cannot be defeated by fraudulent joinder.

When a case is filed in state court and complete diversity exists between opposing parties, Congress has given defendants the right to remove the case to federal court. *See* 28 U.S.C. § 1441(b). This "removal process was created by Congress to protect defendants." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005). Sometimes, however, a plaintiff will name "a non-diverse defendant . . . as part of a tactical effort to defeat diversity jurisdiction." *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 817 (E.D. Va. 2005). In such cases, the doctrine of fraudulent joinder "allows a district court to disregard the citizenship of certain nondiverse defendants and assume jurisdiction." *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1004 n.2 (4th Cir. 2014).

This doctrine is of the utmost importance to our federal system because the right of removal that Congress has given defendants "is at least as important as the plaintiff's right to the forum of his choice," and courts do not allow this right to be "easily overcome by tactical maneuvering by plaintiffs." *McKinney v. Bd. of Tr. of Mayland Cmty. Coll.*, 955 F.2d 924, 927–28 (4th Cir. 1992). Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome

15

it." *Id.* at 928. Therefore, "it is well-settled that the district court will not allow removal to be defeated by a plaintiff's improper . . . joinder of parties." 14C Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3723.1 (Rev. 4th ed.).

The Supreme Court has long recognized the importance of this doctrine. When a plaintiff "attempts to sue in the state courts with a view to defeat Federal jurisdiction[,] . . . the Federal courts may, and should, take such action as will defeat attempts to wrongfully deprive" defendants of their right to litigate in federal court. *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 182–83 (1907). "[T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be . . . vigilant to protect the right to proceed in the Federal court." *Id.* at 186.

To establish fraudulent joinder, the defendant must establish either that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (emphasis omitted), or that "there is no real intention to get a joint judgment," *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003

16

(4th Cir. 1990) (cleaned up); *see also Martin v. Norfolk & W. Ry. Co.*, 43 F.2d 293, 295 (4th Cir. 1930). Courts have long recognized these two bases for fraudulent joinder. *See Chicago, R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913) (removing party must demonstrate either that plaintiff has no "colorable ground" to establish a cause of action against in-state defendant in state court, or that there is no "real intention to get a joint judgment"); *see also* 14C *Fed. Prac. & Proc. Juris.* § 3723.1 ("[A] party will be considered fraudulently joined—and removal will be permitted—when the plaintiff plainly has not stated or cannot state a claim for relief against that non-diverse individual or entity under the applicable substantive law or does not intend to secure a judgment against that particular defendant."). Many courts have emphasized that the basis for the plaintiff's claim must be "reasonable" or "colorable." *See, e.g.*, *Schwyhart*, 227 U.S. at 194; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (10th Cir. 2010); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009); *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003); *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 101, 111 (3d Cir. 1990).

17

Moreover, it is well-established that, "in determining whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464. Indeed, this Court has acknowledged that a "district court *should consider affidavits* . . . submitted by the parties in deciding fraudulent joinder." *Boss*, 228 F. App'x at 336 (emphasis added) (citing *Crowe v. Coleman,* 113 F.3d 1536 (11th Cir. 1997)). In fact, "[w]hen"—as here— "the Defendants' affidavits are undisputed by the Plaintiff[], the court *cannot* resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.* (emphasis added) (quoting *Legg*, 428 F.3d at 1323).

## B. Based on both the pleadings and the record, Plaintiff has no possibility of establishing a claim against Brabham or Piedmont.

Plaintiff has no possibility—let alone a reasonable one—of establishing any claim against either Brabham or Piedmont. Plaintiff has sued these Defendants on the basis of allegations that are conclusory, attenuated, or altogether lacking, and which are thoroughly rebutted by the undisputed evidence offered by Brabham and Piedmont.

18

### 1. According to its own allegations, Plaintiff has no possibility of establishing a claim against Brabham or Piedmont.

Plaintiff maintains that its claims are premised on the theory that Defendants "have known for decades" about the asserted harms of their fossil fuel products and their products' impact on climate change, but "nevertheless engaged in a coordinated, multi-front effort" to deceive the public as to these harms. J.A.0137; *see also* J.A.0139–0149, J.A.0221–022, J.A.0256–0262, J.A.0263–0266, J.A.0269–0271. Indeed, Plaintiff has insisted that "liability is cabined to those who coordinated, directed, or implemented the decades-long efforts to mislead consumers, regulators, and the public about the dangers of fossil fuel consumption." J.A.1087. On this theory, liability for any of Plaintiff's claims necessarily requires some involvement in this purported deception campaign, as well as some level of early or superior knowledge regarding the alleged role that fossil fuels play in contributing to climate change.

But even assuming that Plaintiff's theory is a proper reading of the Complaint, the Complaint includes no specific allegations whatsoever as to *any* role played, or action taken, by Brabham or Piedmont in any purported disinformation, deception, public relations, or advocacy campaign.

19

In fact, the Complaint attributes no statements or communications to Brabham or Piedmont *at all*. It provides no basis to conclude that Brabham or Piedmont had any early or superior knowledge of climate change science as compared to the general public, nor does it allege that Brabham or Piedmont ever had access to the alleged scientific information that Plaintiff claims put Defendants in a better position to inform the public.

Absent any allegations implicating Brabham or Piedmont under Plaintiff's theory of liability, Plaintiff cannot establish its claims against the two companies under South Carolina law. In South Carolina, "[w]hen a plaintiff states nothing more than legal conclusions, a claim should fail." *Paradis v. Charleston Cnty. Sch. Dist.*, 819 S.E.2d 147, 153 (S.C. Ct. App. 2018), *rev'd on other grounds*, 861 S.E.2d 774 (S.C. 2021); *see also Talbott v. Padgett*, 8 S.E. 845, 847 (S.C. 1889) (claims that consist "merely of legal conclusions" and "vague and indefinite allusions and inferences" should be dismissed).

That is all that Plaintiff has offered here. Plaintiff's half-hearted attempts to manufacture any kind of purported connection between Brabham, Piedmont, and the alleged disinformation campaign only

20

highlight the inadequacy of its claims against those two companies. First, Plaintiff alleges that Brabham was a member of the Society of Independent Gasoline Marketers of America ("SIGMA"). J.A.0184. But the Complaint contains no other allegations about that entity. Second, Plaintiff alleges that Piedmont's CEO served as Board Secretary of the South Carolina Convenience & Petroleum Marketers Association ("SCCPMA"). J.A.0147, J.A.0185. Plaintiff then alleges that the SCCPMA is a division of the Petroleum Marketers Association of America ("PMAA"). *Id.* Plaintiff further alleges that the PMAA was *in turn* a member of the GCC, which Plaintiff alleges funded deceptive advertising campaigns. J.A.0232–0233. Third, Plaintiff alleges that Brabham previously was a "commissioned agent" or "wholesale jobber" for certain Defendants, J.A.0144, but gives no indication of the relevance of those positions. Fourth, Plaintiff alleges that Citgo, the non-defendant licensor of Piedmont's branding, is a member of the American Petroleum Institute ("API"), which Plaintiff alleges promoted disinformation regarding fossil fuels. J.A.0147, J.A.0181–0183.

Notably lacking in these scattershot assertions is any allegation of involvement by Brabham or Piedmont in any alleged disinformation

21

campaign, or indeed any alleged actions by these organizations related to climate change whatsoever. The Complaint does not allege that SIGMA engaged in any activity related to the alleged disinformation campaign or to climate change, much less that Brabham, through its membership, played any role in any such activity. Likewise, the Complaint does not allege that the SCCPMA engaged in any activity related to the alleged disinformation campaign or to climate change, or that Piedmont, through its involvement or its CEO's position as Board Secretary, played any role in any such activity. Nor does the Complaint allege how Brabham or Piedmont could possibly have been involved in any activity related to climate change through Brabham's past status as a commissioned agent or wholesale jobber, or because Citgo is a licensor of Piedmont's branding.

In the absence of such allegations, Plaintiff has no possibility of establishing its claims against Brabham or Piedmont. "[M]ere membership in [an] unincorporated association does not subject members to liability for [the] unlawful actions of [the] association." *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1446 n.8 (4th Cir. 1993) (citation omitted); *accord NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920, 927 (1982); 6 Am. Jur. 2d *Assocs. and Clubs* § 29 (recognizing that "[a] member of an

unincorporated association cannot be held vicariously liable for the negligent acts of the association . . . on the basis of membership alone"). Further, Plaintiff does not even allege that Brabham or Piedmont have ever been members of the GCC or API, only that Piedmont's branding licensor was a member of API and that its CEO served as Board Secretary for a division of an association that was a member of the GCC. Moreover, Plaintiff does not allege that Piedmont's CEO's Board position even coincided with the existence of the GCC. *See* J.A.0147. Indeed, given that the GCC was "disbanded" more than twenty years ago, *see* J.A.0185–0186—whereas Plaintiff alleges that Piedmont's CEO currently "services" [sic] as the Board Secretary J.A.0147—there is no sufficiently alleged connection between his tenure and the GCC's existence. These allegations are far too vague, conclusory, and attenuated to possibly survive dismissal under South Carolina law.

"Where a complaint is so inadequate and the record so entirely lacking in factual support," the Court "can only reasonably conclude that the non-diverse defendants were added to defeat jurisdiction." *Flores*, 563 F. App'x at 269. In *Flores*, "[t]he extent" of the plaintiff's allegations against the non-diverse defendants was a generic assertion of negligence against

23

"all of the defendants, diverse and non-diverse"; the complaint "contain[ed] no allegations of specific actions" by the non-diverse defendants. *Id.* at 269. So too here: Plaintiff has lodged generic claims against Brabham and Piedmont without alleging any specific conduct, statements, or actions by these two Defendants that might supply a basis for liability. This is insufficient to avoid fraudulent joinder. *See McFadden v. Federal Nat'l Mortg. Ass'n*, 525 F. App'x 223, 229–30 (4th Cir. 2013) (finding fraudulent joinder when allegations "did not mention" the non-diverse defendant, or were "vague [and] unsupported"); *Putnam v. Wake Christian Acad.*, 2019 WL 8375930, at *3 (D.S.C. Nov. 25, 2019) (holding that fraudulent joinder existed when defamation allegations under South Carolina law were "vague and conclusory in nature," containing "no information about [the] alleged defamatory statements, including what defamatory statement was made, when it was made, or to which third party the statement was published"), *report and recommendation adopted*, 2020 WL 582236 (D.S.C. Feb. 6, 2020).

Similarly, here, Plaintiff provides no specific allegations regarding any statements or knowledge attributable to Brabham or Piedmont. Indeed, it would be fundamentally unfair to allow Plaintiff to drag

24

Brabham and Piedmont—two small, family-owned businesses—into national litigation to face billions of dollars in potential liability over the alleged impacts of global climate change—forcing them, at the very least, to incur the significant burdens and expenses associated with the litigation—simply because Plaintiff would prefer to avoid federal court.

A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Plaintiff's vague, attenuated allegations are insufficient, and federal jurisdiction exists.

> ## 2. The record as a whole further confirms that Plaintiff's claims against Piedmont and Brabham are not viable.

The paucity of allegations in Plaintiff's Complaint is more than sufficient to establish fraudulent joinder. But considering the whole record makes it even clearer that Plaintiff has no possibility of establishing a claim against Brabham or Piedmont. As discussed above, *see supra* at 18, when evaluating fraudulent joinder, a court not only can but should look to the whole record, including evidence offered by the removing

party, rather than deferring entirely to the allegations in the plaintiff's pleadings. *See Mayes*, 198 F.3d at 464; *Boss*, 228 F. App'x at 336.

Below, Brabham and Piedmont submitted sworn declarations by the Vice President of Piedmont and the CEO of Brabham. Plaintiff did not rebut or contest these declarations in any way. As the declarations explain, Brabham is a small, closely held family business whose wholesale and retail petroleum marketing business was sold in 2018. J.A.1549. Likewise, Piedmont is a small family business, which does not even have a website. J.A.1546. Neither Brabham nor Piedmont has ever engaged in any marketing campaign related to climate change; indeed, Piedmont has never engaged in any marketing campaign at all. J.A.1546, J.A.1549. Furthermore, neither Brabham nor Piedmont has ever engaged in any research related to climate change. J.A.1546, J.A.1549.

The declarations also thoroughly rebut Plaintiff's guilt-by-association allegations. Neither Brabham nor Piedmont has ever participated in a meeting of the PMAA, the parent entity of the SCCPMA. J.A.1546, J.A.1549. Neither Brabham nor Piedmont has ever attended or participated in a meeting of the GCC, or taken any action on behalf of that organization. J.A.1546, J.A.1549. Neither Brabham nor Piedmont has ever

played any role in any alleged disinformation campaign carried out by the GCC. J.A.1546, J.A.1549. And although Brabham has been a member of SIGMA on occasion, it has never sought or held a leadership position in SIGMA, participated or played any role in any advocacy efforts by SIGMA, or attended any SIGMA meetings related to climate change. J.A.1548.

These uncontroverted facts make clear that Brabham and Piedmont were not involved in any of the alleged activity that forms the basis for Plaintiff's claims against Defendants.

A determination of fraudulent joinder based on this undisputed record would align with this Court's decisions confirming that courts need not—and should not—defer to unsupported or conclusory allegations in a plaintiff's pleadings when the removing party offers evidence to the contrary. *Boss*, 228 F. App'x at 336. In *Johnson v. American Towers, LLC*, for example, a prison guard who was shot in his home at the direction of an inmate who ordered the attack using a contraband cellular telephone brought a state-court action against several wireless service providers and owners of cell phone towers, alleging that they were liable for his injuries because they were aware that their services "facilitated the

27

illegal use of cell phones by inmates and yet failed to take steps to curb that use." 781 F.3d 693, 699 (4th Cir. 2015). This Court, however, concluded that one of the non-diverse defendants, a wireless service provider, was "properly disregarded . . . for diversity purposes" based on the defendant's "undisputed" showing that it lacked a license to provide cell phone service where the prison was located. *Id.* at 704–05. Thus, the defendant "could not possibly" have been liable, as alleged by the plaintiff. *Id.* at 704.

Likewise, in *Boss v. Nissan North America, Inc.*, the plaintiff alleged that the defendant Jiffy Lube was negligent in "providing partial or incomplete service to the power steering mechanism and/or fluid" of a car that subsequently crashed, and in "failing to properly instruct its customers in the proper way to maintain and/or inspect" these components. 228 F. App'x at 335. Jiffy Lube submitted an affidavit demonstrating that, in fact, the company had never agreed to inspect the power steering mechanism or fluid of the car, and actually performed a different set of services. *Id.* at 335–36. The plaintiff "made no attempt . . . to rebut Jiffy Lube's affidavit," and this Court took Jiffy Lube's proffered facts as established and concluded that the plaintiff had no reasonable basis for its

28

claim against Jiffy Lube, and therefore that Jiffy Lube had been fraudulently joined. *Id*. at 336.

A number of fraudulent joinder decisions by district courts in this Circuit similarly have credited evidence introduced by the removing party over a plaintiff's unsupported allegations. *See, e.g.*, *Kueilin Lu Tu v. U-Haul Co. of S.C., Inc.*, 333 F. Supp. 3d 576, 579, 581–82 (D.S.C. 2018) (crediting defendant company's unrebutted affidavits that it did not own the truck with which plaintiff allegedly collided because "[w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot resolve the facts in Plaintiff's favor based solely on the unsupported allegations in the Plaintiff's complaint"); *Evans v. K-VA-T Food Stores, Inc.*, 2013 WL 1639414, at *3–5 (S.D. W. Va. Apr. 16, 2013) (crediting, in negligent supervision claim against supermarket manager for pharmacy error, defendant's affidavit that manager had no responsibility over pharmacy); *Carter v. Hitachi Koki U.S.A., Ltd.*, 445 F. Supp. 2d 597, 599–601 (E.D. Va. 2006) (crediting defendant's evidence that defendant had not sold plaintiff the tool that allegedly injured him).

Further, Plaintiff has no "real intention to get a joint judgment" against Brabham or Piedmont. *Schwyhart*, 227 U.S. at 194. Plaintiff's

targets in this suit are the same defendants that have been sued in similar climate suits across the country—those it describes as "major corporate members of the fossil fuel industry." J.A.0137. Its targets are *not* two small, family-owned South Carolina companies that have never been named as defendants in any other climate suit, against whom it alleges nothing of relevance, and from which any recovery would be negligible. Indeed, one of these two companies sold its wholesale and retail petroleum marketing business several years ago. J.A.1549. In *Linnin*, the district court found fraudulent joinder where the plaintiff "ha[d] nothing to gain from joining" the employee "except for defeating diversity." 372 F. Supp. 2d at 824. The situation is the same here: Plaintiff has nothing to gain from joining Brabham or Piedmont save for attempting to evade federal court.

There can be no serious claim that Plaintiff would have brought this suit against Brabham or Piedmont alone. Instead, Plaintiff appended these Defendants to its action in what can "only reasonably" be viewed as an effort "to defeat jurisdiction." *Flores*, 563 F. App'x at 269. The Court should not reward this attempt to evade federal jurisdiction by forcing two small, family-owned businesses into court to answer for the

30

alleged effects of global climate change, when they have "no real connection with the controversy." *Wilson*, 257 U.S. at 97.

### C. The district court erred in finding Plaintiff's disinformation theory viable against Brabham and Piedmont based on bare, unsupported allegations contradicted by the undisputed factual record.

The district court rejected Defendants' fraudulent joinder argument in four paragraphs, based solely on its erroneous conclusion that Plaintiff's "disinformation theory" was viable against Brabham and Piedmont. J.A.1561. The district court suggested that the Complaint alleged that "Piedmont and Brabham participated in the disinformation campaign." J.A.1561. But as support for that suggestion, the court pointed to only one example of purported participation, that "the Complaint connects Piedmont to the Global Climate Coalition"—presumably a reference to the company's CEO's role in the SCCPMA, which is part of the PMAA, which in turn was previously a member of the GCC. *Id*. But, as noted above, Plaintiff's allegations collapse on their own terms because, while Plaintiff alleges that Piedmont's CEO *currently* serves as the Board Secretary of the SCCPMA, J.A.0147, Plaintiff separately acknowledges that the GCC was "disbanded" more than twenty years ago, *see* J.A.0185–0186. Plaintiff's Complaint includes no allegation of any role by

31

Piedmont (or Brabham) twenty years ago when the GCC was in exist-ence, and no allegation that Piedmont exercised any control over the PMAA, let alone over the GCC. Critically, the district court acknowl-edged that "Piedmont's affidavit refutes [Plaintiff's] allegation." J.A.1562. But, nevertheless, the court assumed that it was precluded from considering that evidence. *Id.*

That was error. This Court has made clear that when, as here, a plaintiff's unsupported allegations are contradicted by unrebutted evi-dence offered by the removing party, the district court may not defer to the plaintiff's allegations when determining whether the defendant was fraudulently joined. *See, e.g.*, *Boss*, 228 F. App'x at 336; *Mayes*, 198 F.3d at 464. Any other conclusion would conflict not only with this Court's cases, but also with cases from numerous other circuits. *See, e.g.*, *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ("[T]he court may employ a summary-judgment-like procedure to examine affidavits and deposition testimony for evidence of fraud [in the context of fraudulent joinder]."); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type

32

evidence such as affidavits and deposition testimony."); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."); *cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (explaining that summary judgment "requires the nonmoving party to go beyond the pleadings").

To hold otherwise—as the district court did here—would permit a plaintiff to defeat federal jurisdiction on the basis of the most vague and unsupported allegations, no matter how at odds with the undisputed record. Such an approach would render the fraudulent joinder doctrine a nullity.

The court below relied on *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 425 (4th Cir. 1999), for the proposition that "the Court may not act as a fact finder in deciding jurisdictional questions." J.A.1562. *Hartley* holds no such thing. Rather, *Hartley* held only that a district court should not "delv[e] too far into the merits in deciding a jurisdictional question," and that "a jurisdictional inquiry [was] not the appropriate

stage of litigation to resolve [all of the] various uncertain questions of law and fact" presented in that case. *Id.* It did not hold that a district court may not consider a defendant's unrebutted two- and three-page declarations that squarely contradict the inadequate and conclusory allegations of the plaintiff's pleadings. To the contrary, that is exactly when courts *can and should* consider that evidence. *See Mayes*, 198 F.3d at 464; *Boss*, 228 F. App'x at 336.

The district court also cited a passage from a fraudulent joinder case in the District of South Carolina, which noted that "courts have long held that the question of proximate cause is ordinarily one of fact for the jury." *Stoney Marine Int'l Ltd. v. Arthur J. Gallagher & Co.*, 2016 WL 7334862, at *3 (D.S.C. Dec. 19, 2016). But the court in that case was commenting on the factual nature of the question whether the alleged injuries were "foreseeable," as part of the proximate cause analysis. *Id*. This case presents an entirely different and more straightforward issue, where the undisputed record establishes that Brabham and Piedmont simply did not engage in the complained-of conduct. Again, this is the type of analysis that courts regularly undertake in the fraudulent joinder context.

When the proper test is applied, and the declarations that conced-edly "refute[] [Plaintiff's] allegation," J.A.1562, are given their proper weight, it is uncontroverted that neither Brabham nor Piedmont was connected with any purported disinformation campaign, or engaged in any kind of activity that Plaintiff alleges as the basis for liability. Plaintiff thus has no reasonable possibility of establishing a claim against either Defendant. The Court should reverse the district court's remand order and hold that Brabham and Piedmont were fraudulently joined. In the alternative, the Court should remand this case for the district court to apply the appropriate standard for fraudulent joinder and fully consider the record.

## II.    These Actions Are Removable Under The Federal Officer Removal Statute And *Grable*.

Removal is also proper under the federal officer removal statute, 28 U.S.C. § 1442(a), and the *Grable* doctrine. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

Defendants' arguments as to these two grounds for removal are currently pending before this Court in *Anne Arundel County v. BP P.L.C.*, No. 22-2082, and *City of Annapolis v. BP P.L.C.*, No. 22-2101, which will be argued in December 2023. This Court's rulings in those cases will be

dispositive of these two grounds for removal here. Therefore, Defendants respectfully submit that the most efficient use of judicial resources would be to defer to this Court's decisions in those cases when resolving these two bases for removal.

**1.** As Defendants have explained in *Anne Arundel* and *Annapolis*, the federal officer removal statute provides for removal of suits brought against any person acting under a federal officer whenever the "civil action" is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Federal officer removal is proper when (1) the defendant acted under a federal officer; (2) the plaintiff's civil action is "for or relating to"—*i.e.*, connected or associated with—that act; and (3) the defendant can assert a colorable federal defense. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017). In assessing whether the facts of the case meet this standard, courts must "credit [the defendant's] theory of the case" and liberally construe matters in favor of the federal forum. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999).

Here, the district court assumed that this Court's decision in *Baltimore IV* required it to remand these suits to state court. *See* J.A.1558. That was incorrect. As in *Anne Arundel* and *Annapolis*, Defendants

36

raised new arguments here that were not presented to or passed upon by the Court in *Baltimore IV*. Specifically, Plaintiff's "civil action[s]" necessarily "relat[e] to" Defendants' alleged extraction and production of fossil fuels, 28 U.S.C. § 1442(a)(1), because Plaintiff's claimed *injuries* were allegedly caused in part by Defendants' production and sale of oil and gas, substantial amounts of which occurred under the direction of federal officers. This argument was not raised in *Baltimore IV* and the Court therefore had no opportunity to rule on it.

Importantly, moreover, Defendants also presented new evidence in this case that was not before the Court in *Baltimore IV*. That evidence fully addresses purported evidentiary gaps identified by *Baltimore IV*, including evidence of Defendants:

- producing specialized fuels for the military, *see* J.A.0077–0091, J.A.1206, J.A.1322–1525;

- acting under the direction of the military during World War II and the Korean War, *see* J.A.0077–0083, J.A.1181–1187, J.A.1191–1195, J.A.1202–1203, J.A.1249; and

- supplying oil to the Strategic Petroleum Reserve, *see* J.A.0074–0077, J.A.0625–0627.

37

And the record here also addresses specific areas identified by the *Baltimore IV* Court as needing additional factual development, including:

- new evidence that Defendants acted under federal officers in performing operations on the Outer Continental Shelf to fulfill basic government duties that the federal government otherwise would have needed to perform itself, *see* J.A.0581–0591, J.A.1091–1171, J.A.1216–1221; and

- new evidence, including declassified documents, that Standard Oil, a predecessor of Defendant Chevron, acted under federal officers by operating the Elk Hills reserve under the control of the U.S. Navy, and that Standard Oil was "*in the employ* of the Navy Department and [was] responsible to the Secretary thereof," J.A.1226 (emphasis added); *see also* J.A.0566, J.A.0578, J.A.0603–0614, J.A.1263.

These new categories of evidence demonstrate a thoroughgoing relationship between Defendants' actions allegedly giving rise to Plaintiff's injuries and Defendants' actions under federal control, filling the exact gaps that the *Baltimore IV* Court identified as "diminish[ing]" the nexus between Plaintiff's claims and Defendants' federal actions. 31 F.4th at

234. Thus, in contrast to the *Baltimore IV* Court's assessment of the limited record before it, the specific evidence here establishes a connection between Defendants' extensive activities taken under federal control and Plaintiff's claims.

**2.** Plaintiff's claims are also removable under *Grable* because they necessarily incorporate affirmative federal constitutional elements imposed by the First Amendment.

Under *Grable*, lawsuits alleging only state-law causes of action may still "arise under" federal law if they require resolution of substantial, disputed federal questions, thereby justifying removal. *See* 545 U.S. at 313–14. Here, even if the Court were to construe Plaintiff's claims as limited to alleged misrepresentations, those claims still would arise under federal law for purposes of *Grable* jurisdiction because they necessarily incorporate affirmative federal constitutional elements imposed by the First Amendment. Plaintiff cannot prevail without demonstrating that the alleged misrepresentations are not protected by the First Amendment. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774–76 (1986); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 285–86 (1964). These federal issues are not "defenses," but constitutionally

required elements of the plaintiff's cause of action, for which the plaintiff "bear[s]" the burden of proof—by clear and convincing evidence—as a matter of federal law. *Hepps*, 475 U.S. at 774–76; *see also Sullivan*, 376 U.S. at 279–80, 285–86 (plaintiff public officials bear burden of proving with "convincing clarity" that "statement was made with 'actual malice'"). Indeed, First Amendment interests are at their apex when—as here—a governmental entity is seeking to use state law to regulate disfavored speech on issues of uniquely "public concern." *Hepps*, 475 U.S. at 775. Plaintiff's attempt to regulate Defendants' speech on the important public matter of climate change through litigation thus necessarily raises substantial First Amendment questions that belong in federal court.

## III. Defendants Preserve Additional Arguments That Plaintiff's Claims Arise Under Federal Law.

Defendants also preserve for potential further review their arguments that Plaintiff's claims arise under federal law because federal law necessarily and exclusively governs claims seeking relief for harms allegedly stemming from interstate and international pollution, *see* J.A.0032–0042; that Plaintiff's claims are removable under *Grable* because they raise and depend on the resolution of disputed, substantial federal questions because Plaintiff's claims are governed by federal law, and also

40

relate to the federal government's exclusive control over foreign affairs and treaty interpretation, as well as other issues of constitutional law under the Interstate and Foreign Commerce Clauses and Due Process Clause, *see* J.A.0091–0109; and that Plaintiff's claims "aris[e] out of, or in connection with" operations on the Outer Continental Shelf, 43 U.S.C. § 1349(b)(1), *see* J.A.0042–0048. This Court rejected these arguments in *Baltimore IV*, but Defendants respectfully preserve them for further review.

## CONCLUSION

The Court should reverse the district court's remand order.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument in this appeal. As described above, removal is proper for at least three reasons not yet addressed by this Court. Given the complexity of the issues presented, Defendants submit that oral argument would be beneficial to the resolution of this case.

October 2, 2023

Respectfully submitted,

/s/ J. Scott Janoe
J. Scott Janoe
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-1553
Facsimile: (713) 229-7953
E-mail: scott.janoe@bakerbotts.com

Megan H. Berge
Sterling Marchand
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001
Telephone: (202) 639-1308
Facsimile: (202) 639-1171
E-mail: megan.berge@bakerbotts.com
E-mail: sterling.marchand@bakerbotts.com

Robert Jordan
PARKER POE ADAMS &
BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, SC 29403
Telephone: (843) 727-2650
Facsimile: (843) 727-2680
Email: robertjordan@parkerpoe.com

*Attorneys for Defendant-Appellant Hess
Corp.*

/s/ Tristan L. Duncan
Tristan L. Duncan
Daniel B. Rogers
Caroline M. Gieser
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
E-mail: tlduncan@shb.com
E-mail: drogers@shb.com
E-mail: cgieser@shb.com

*Attorneys for Defendant-Appellant
Murphy Oil USA, Inc.*

/s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.
William E. Thomson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
E-mail: tboutrous@gibsondunn.com
E-mail: wthomson@gibsondunn.com

Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
E-mail: aneuman@gibsondunn.com

Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
E-mail: thungar@gibsondunn.com

Joshua D. Dick
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
E-mail: jdick@gibsondunn.com

Johnny W. Carter
Erica W. Harris
Ashley L. McMillian
Mary K. Sammons
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
E-mail: eharris@susmangodfrey.com
E-mail: jcarter@susmangodfrey.com
E-mail: amcmillian@susmangodfrey.com
E-mail: ksammons@susmangodfrey.com

42

/s/ Alice W. Parham Casey
Alice W. Parham Casey
WYCHE, P.A.
807 Gervais Street, Suite 301
Columbia, SC 29201
Telephone: (803) 254-6542
Facsimile: (803) 254-6544
E-mail: tcasey@wyche.com

Meliah Bowers Jefferson
Rachael L. Anna
WYCHE, P.A.
200 East Broad Street
Greenville, SC 29601
Telephone: (864) 242-8200
Facsimile: (864) 235-8900
E-mail: mjefferson@wyche.com
E-mail: ranna@wyche.com

Jameson R. Jones
Daniel R. Brody
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3123
E-mail: jameson.jones@bartlit-beck.com
E-mail: dan.brody@bartlit-beck.com

Steven M. Bauer
Margaret A. Tough
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Steven.Bauer@lw.com
Margaret.Tough@lw.com

Ericka Aiken
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
E-mail: Ericka.Aiken@wilmerhale.com

*Attorneys for Defendants-Appellants Cono-coPhillips, and ConocoPhillips Company*

Steven M. Shepard
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
E-mail: sshepard@susmangodfrey.com

Joel H. Smith
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1200
Columbia, SC 29201
Telephone: (803) 726-7422
E-mail: Joel.Smith@bowmanandbrooke.com

M. Dawes Cooke, Jr.
BARNWELL WHALEY PATTERSON
& HELMS LLC
211 King Street, Suite 300, P.O. Drawer H
Charleston, SC 29402
Telephone: (843) 577-7700
E-mail: mdc@barnwell-whaley.com

*Attorneys for Defendants-Appellants Chevron Corporation and Chevron U.S.A. Inc.*

/s/ J. Scott Janoe
J. Scott Janoe
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-1553
Facsimile: (713) 229-7953
E-mail: scott.janoe@bakerbotts.com

Megan H. Berge
Sterling Marchand
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001
Telephone: (202) 639-1308
Facsimile: (202) 639-1171
E-mail: megan.berge@bakerbotts.com
E-mail: sterling.marchand@bakerbotts.com

Robert Jordan
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, SC 29403
Telephone: (843) 727-2650
Email: robertjordan@parkerpoe.com

*Attorneys for Defendant-Appellant Murphy Oil Corporation*

43

/s/ David C. Frederick
David C. Frederick
Daniel S. Severson
Grace W. Knofczynski
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
E-mail: dfrederick@kelloghansen.com
E-mail: dseverson@kelloghansen.com
E-mail: gknofczynski@kelloghansen.com

Jennifer H. Thiem
K&L GATES LLP
134 Meeting Street, Suite 500
Charleston, SC 29401
Phone: (843) 579-5638
Facsimile: (843) 579-5601
Email: jennifer.thiem@klgates.com

*Attorneys for Defendants-Appellants Shell plc
(f/k/a Royal Dutch Shell plc), Shell USA, Inc.
(f/k/a Shell Oil Company), and Shell Oil Prod-
ucts Company LLC*

/s/ Lindsay Anne Joyner
Lindsay Anne Joyner
John Thomas Lay, Jr.
GALLIVAN, WITE & BOYD, PA
P.O. Box 7368
Charleston, SC 29413
Telephone: (843) 735-7600
Facsimile: (843) 414-8070
E-mail: ljoyner@gwblawfirm.com
E-mail: jlay@gwblawfirm.com

*Attorneys for Defendants-Appellants Colonial
Group, Inc. and Enmark Stations, Inc.*

/s/ Alice W. Parham Casey
Alice W. Parham Casey
WYCHE, P.A.
807 Gervais Street, Suite 301
Columbia, SC 29201
Telephone: (803) 254-6542
Facsimile: (803) 254-6544
E-mail: tcasey@wyche.com

Meliah Bowers Jefferson
Rachael L. Anna
WYCHE, P.A.
200 East Broad Street
Greenville, SC 29601
Telephone: 864-242-8200
Facsimile: 864-235-8900
E-mail: mjefferson@wyche.com
E-mail: ranna@wyche.com

Steven M. Bauer
Margaret A. Tough
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: Steven.Bauer@lw.com
E-mail: Margaret.Tough@lw.com

*Attorneys for Defendants-Appellants Phillips
66 and Phillips 66 Company*

/s/ Brian C. Duffy
Brian C. Duffy, Esq.
Patrick C. Wooten, Esq.
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 29401
E-mail: bduffy@duffyandyoung.com
E-mail: pwooten@duffyandyoung.com

*Attorneys for Defendant-Appellant Piedmont
Petroleum Corp.*

/s/ J. Calhoun Watson
J. Calhoun Watson
Sarah C. Frierson
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, SC 29211
Telephone: (803) 929-1400
E-mail: cwatson@robinsongray.com
E-mail: sfrierson@robinsongray.com

*Attorneys for Defendant-Appellant Brabham
Oil Company, Inc.*

William A. Burck*
QUINN EMANUEL URQUHART & SULLI-
VAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
E-mail: williamburck@quinnemanuel.com

Stephen A. Swedlow*
QUINN EMANUEL URQUHART & SULLI-
VAN, LLP
191 North Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
E-mail: stephenswedlow@quinnemanuel.com

*Attorneys for Defendant-Appellant Colonial
Pipeline Company*

/s/ Kannon K. Shanmugam
Kannon K. Shanmugam
William T. Marks
PAUL, WEISS, RIFKIND, WHAR-
TON & GARRISON LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
E-mail: kshanmugam@paulweiss.com
E-mail: wmarks@paulweiss.com

/s/ Theodore V. Wells, Jr.
Theodore V. Wells, Jr.
Daniel J. Toal
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3089
Facsimile: (212) 492-0089
E-mail: twells@paulweiss.com
E-mail: dtoal@paulweiss.com

Molly H. Craig
Robert H. Hood, Jr.
Virginia R. Floyd
HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Telephone: (843) 577-4435
Facsimile: (843) 722-1630
E-mail: molly.craig@hoodlaw.com
E-mail: bobbyjr.hood@hoodlaw.com
E-mail: virginia.floyd@hoodlaw.com

*Attorneys for Defendants-Appellants Exxon Mo-
bil Corporation and ExxonMobil Oil Corpora-
tion*

/s/ Jonathan W. Hughes
Jonathan W. Hughes
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3156
Facsimile: (415) 471-3400
E-mail: jonathan.hughes@arnoldporter.com

Nancy Milburn
Diana Reiter
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
E-mail: nancy.milburn@arnoldporter.com
E-mail: diana.reiter@arnoldporter.com

John D. Lombardo
ARNOLD & PORTER KAYE
SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
E-mail: john.lombardo@arnoldporter.com

Merritt G. Abney
NELSON MULLINS RILEY & SCARBOROUGH
LLP
151 Meeting Street, Suite 600
Charleston, SC 29401
Telephone: (843) 534-4110
Facsimile: (843) 722-8700
E-mail: merritt.abney@nelsonmullins.com

*Attorneys for Defendants-Appellants BP plc
and BP America Inc.*

/s/ Shannon S. Broome
Shannon S. Broome
Ann Marie Mortimer
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
E-mail: SBroome@HuntonAK.com
E-mail: AMortimer@HuntonAK.com

Shawn Patrick Regan
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, NY 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
E-mail: SRegan@HuntonAK.com

G. Murrell Smith, Jr.
SMITH ROBINSON
126 N. Main Street
Sumter, SC 29151
Telephone: (803) 778-2471
Facsimile: (803) 778-1643
E-mail: murrell@smithrobinsonlaw.com

*Attorneys for Defendants-Appellants Marathon
Petroleum Corporation, Marathon Petroleum
Company LP, and Speedway LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (New Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 7,722 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

/s/ *Theodore J. Boutrous Jr.*
Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP

*Attorney for Defendants-Appellants*
*Chevron Corp. and Chevron U.S.A.*
*Inc.*

47

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP

*Attorney for Defendants-Appellants Chevron Corp. and Chevron U.S.A. Inc.*

## STATUTORY ADDENDUM

Pursuant to Fourth Circuit Local Rule 28(b) and Federal Rule of Appellate Procedure 28(f), this addendum includes pertinent statutes, reproduced verbatim:

| Statute | Page |
|---|---|

28 U.S.C. § 1291 ...................................................................50

28 U.S.C. § 1292 ...................................................................50

28 U.S.C. § 1332 ...................................................................51

28 U.S.C. § 1442 ...................................................................52

28 U.S.C. § 1447 ...................................................................53

### 28 U.S.C. § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

### 28 U.S.C. § 1292. Interlocutory decisions

. . .

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon,

in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

. . . .

**28 U.S.C. § 1332. Diversity of citizenship; amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1)    citizens of different States;

(2)    citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are

lawfully admitted for permanent residence in the United
States and are domiciled in the same State;

(3)    citizens of different States and in which citizens or subjects of
       a foreign state are additional parties; and

(4)    a foreign state, defined in section 1603(a) of this title, as plain-
       tiff and citizens of a State or of different States.

. . . .


**28 U.S.C. § 1442. Federal officers or agencies sued or prose-
cuted**

(a) A civil action or criminal prosecution that is commenced in a
State court and that is against or directed to any of the following may be
removed by them to the district court of the United States for the district
and division embracing the place wherein it is pending:

(1)    The United States or any agency thereof or any officer (or any
       person acting under that officer) of the United States or of any
       agency thereof, in an official or individual capacity, for or re-
       lating to any act under color of such office or on account of any
       right, title or authority claimed under any Act of Congress for

52

the apprehension or punishment of criminals or the collection of the revenue.

(2)    A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3)    Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4)    Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

. . . .

**28 U.S.C. § 1447. Procedure after removal generally**

. . . .

(d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

53