No. 23-1802

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CITY OF CHARLESTON,

*Plaintiff-Appellee*,

v.

BRABHAM OIL COMPANY, INC.; COLONIAL GROUP, INC.; ENMARK STATIONS, INC.; COLONIAL PIPELINE COMPANY; PIEDMONT PETROLEUM CORP.; EXXON MOBIL CORP.; EXXONMOBIL OIL CORP.; SHELL PLC; SHELL USA, INC.; SHELL OIL PRODUCTS COMPANY LLC; CHEVRON CORP.; CHEVRON U.S.A. INC.; BP PLC; BP AMERICA, INC.; MARATHON PETROLEUM CORP.; MARATHON PETROLEUM COMPANY LP; SPEEDWAY LLC; MURPHY OIL CORP.; MURPHY OIL USA, INC.; HESS CORP.; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66; PHILLIPS 66 COMPANY

*Defendants-Appellants.*

Appeal from the United States District Court
for the District of South Carolina, No. 2:20-cv-03579-RMG
(The Honorable Richard M. Gergel)

## PLAINTIFF-APPELLEE'S ANSWERING BRIEF

Wilbur Johnson
Corporation Counsel
Julia Copeland
Melissa Cruthirds
Assistants Corporation Counsel
50 Broad Street,
Charleston, SC 29401
wjohnson@ycrlaw.com
copelandj@charleston-sc.gov
cruthirdsm@charleston-sc.gov

*Counsel for Plaintiff-Appellee*
*City of Charleston*

Joseph P. Griffith, Jr.
Joe Griffith Law Firm, LLC
946 Johnnie Dodds Blvd.
Mt. Pleasant, SC 29464
joegriffithjr@hotmail.com

*Counsel for Plaintiff-Appellee*
*City of Charleston*

*(Additional counsel listed on signature page)*

# TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

ISSUES PRESENTED ........................................................... 7

STATEMENT OF THE CASE ............................................... 7

  I.   The Complaint ......................................................... 7

  II.   Removal and Federal Court Proceedings ...................... 9

SUMMARY OF ARGUMENT ............................................ 11

ARGUMENT ..................................................................... 13

  I.   Standard of Review ............................................... 13

  II.   Defendants Fail to Establish Fraudulent Joinder. ..... 14

    A.   Defendants bear the burden to show the City has no
      possibility of establishing any cause of action. ...... 14

    B.   The allegations in the Complaint provide far more than
      a "glimmer of hope" for the City. ........................ 17

      1.   The Complaint sufficiently connects Piedmont and
         Brabham to the disinformation and deception
         campaigns that caused the City's injuries. ......... 19

      2.   The City adequately pleaded its failure-to-warn
         and UTPA claims against Piedmont and Brabham. ........ 24

        a.   The City's Complaint alleges facially adequate
            failure-to-warn and UTPA claims. ............... 25

        b.   Neither Defendants' arguments nor the resident
            Defendants' declarations rebut the City's
            failure-to-warn or UTPA allegations. ........... 27

      3.   The City intends to collect judgments against the
         Defendants in this case. .................................... 33

    C.   Defendants' declarations fall well short of negating all
      possibility of relief. ........................................... 34

       1.   This is not the type of case that can be resolved
           with a short declaration. ....................................................34

       2.   The declarations are too vague to negate all
           liability and overlook key issues. .......................................39

       3.   The City absolutely disputes the factual issues
           raised in Defendants' declarations. ..................................46

    D.  The district court considered Defendants' declarations
       and did not err in declining to decide contested issues. ........48

III.  The District Court Correctly Found No Basis for
     Federal Officer Removal. ..............................................................51

IV.  The District Court Correctly Found that Defendants'
     First Amendment Defenses Do Not Satisfy *Grable*. ..................55

V.   Defendants Cannot Preserve Arguments by Mere Mention.......60

VI.  Oral Argument Is Unnecessary....................................................61

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*,
    903 F.2d 1000 (4th Cir. 1990) .......................................................15, 33

*Allard v. Laroya*,
    163 F. Supp. 3d 309 (E.D. Va. 2016).....................................................16

*Baltimore Cnty. v. Cigna Healthcare*,
    238 F. App'x 914 (4th Cir. 2007) ..........................................................29

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    405 F. Supp. 3d 947 (D. Colo. 2019) ......................................................2

*Boss v. Nissan North America, Inc.*,
    228 F. App'x 331 (4th Cir. 2007).....................................34, 35, 36, 47

*Boyd v. Guinyard*,
    No. 5:18-CV-00269-JMC, 2018 WL 3322971
    (D.S.C. July 6, 2018).....................................................................41, 42

*Boyer v. Hankook Tire Co., Ltd.*,
    No. 5:14CV165-RLV, 2015 WL 413793 (W.D.N.C. Jan. 30, 2015) ......19

*Bragg v. Hi-Ranger, Inc.*,
    462 S.E.2d 321 (S.C. Ct. App. 1995) .....................................................32

*Burrell v. Bayer Corp.*,
    918 F.3d 372 (4th Cir. 2019) ................................................................56

*CACI Premier Tech., Inc. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) ................................................................57

*California v. Sky Tag, Inc.*,
    No. CV-11-8638-ABC-PLA, 2011 WL 13223655
    (C.D. Cal. Nov. 29, 2011)......................................................................59

*Capers v. Behr Heat Transfer Sys.*,
    No. CIV.A. 2:10-3163-BHH, 2012 WL 2149757
    (D.S.C. June 13, 2012)..........................................................................40

*Carter v. Hitachi Koki U.S.A., Ltd.*,
   445 F. Supp. 2d 597 (E.D. Va. 2006) ................................................ 38, 39

*Carter v. Watkins*,
   No. WDQ-12-2813, 2013 WL 2139504 (D. Md. May 14, 2013) ........... 19

*Caughman v. Atrium Fin. I, LP*,
   574 F. Supp. 3d 316 (D.S.C. 2021) ...................................................... 31

*Chi., R.I. & P. Ry. Co. v. Schwyhart*,
   227 U.S. 184 (1913) ............................................................................ 16

*City & Cnty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022) ............................................................. 52

*City & Cnty. of Honolulu v. Sunoco LP*,
   Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ..... 2, 52

*City of Annapolis v. BP P.L.C.*,
   Nos. 21-772, 21-1323, 2022 WL 4548226
   (D. Md. Sept. 29, 2022) ........................................................ 2, 6, 52, 57

*City of Hoboken v. Exxon Mobil Corp.*,
   558 F. Supp. 3d 191 (D.N.J. 2021) ........................................... 2, 52, 57

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ......................................................... 52, 57

*City of Oakland v. BP P.L.C.*,
   Nos. C 17-06011 WHA, C 17-06012 WHA,
   2022 WL 14151421 (N.D. Cal. Oct. 24, 2022) ................................ 2, 57

*City of Oakland v. BP PLC*,
   969 F.3d 895 (9th Cir. 2020) ................................................................ 1

*Cnty. of Anderson v. Rite Aid of S.C., Inc.*,
   No. 8:18-cv-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20, 2018) ..... 16

*Cnty. of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018) .................................................. 1

*Cnty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ................................................................. 1

*Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
No. 2:21-cv-42-RMG, 2021 WL 5908758 (D.S.C. Dec. 13, 2021) .........31

*Connecticut v. Exxon Mobil Corp.*,
No. 3:20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021) ............2, 57

*Connecticut v. Exxon Mobil Corp.*,
83 F.4th 122 (2d Cir. 2023) ................................................................57

*Delaware v. BP Am. Inc.*,
578 F. Supp. 3d 618 (D. Del. 2022) .................................................2, 57

*District of Columbia v. Exxon Mobil Corp.*,
640 F. Supp. 3d 95 (D.D.C. 2022) .........................................................2

*Dixon v. Coburg Dairy Inc.*,
369 F.3d 811 (4th Cir. 2004) ...................................................13, 58, 59

*Downs v. Los Angeles Unified Sch. Dist.*,
228 F.3d 1003 (9th Cir. 2000) ............................................................54

*Evans v. K-VA-T Food Stores, Inc.*,
No. 2:12-CV-6167, 2013 WL 1639414
(S.D.W. Va. Apr. 16, 2013) ...............................................37, 38, 39, 48

*Evans v. Techs. Applications & Serv. Co.*,
80 F.3d 954 (4th Cir. 1996) ...........................................................39, 41

*Faile v. S.C. Dep't of Juv. Just.*,
566 S.E.2d 536 (S.C. 2002) ................................................................32

*Flores v. Ethicon, Inc.*,
563 F. App'x 266 (4th Cir. 2014) ..................................................23, 34

*Goode v. STS Loan & Mgmt., Inc.*,
No. CIV.A. DKC 2004-0999, 2005 WL 106492
(D. Md. Jan. 14, 2005) ........................................................................45

*Gosnell v. Am. Optical Corp.*,
No. 2:10-CV-00994, 2011 WL 2214192 (S.D.W. Va. June 7, 2011) .....45

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .......................................................................5, 13

*Grayson O Co. v. Agadir International LLC,*
  856 F.3d 307 (4th Cir. 2017) .......................................... 6, 60

*Gunn v. Minton,*
  568 U.S. 251 (2013) ................................................. 56

*Harbourt v. PPE Casino Resorts Md., LLC,*
  820 F.3d 655 (4th Cir. 2016) ...................................... 18

*Hartley v. CSX Transp., Inc.,*
  187 F.3d 422 (4th Cir. 1999) .................................... *passim*

*Hugger v. Rutherford Inst.,*
  63 F. App'x 683 (4th Cir. 2003) .................................... 57

*Hughes v. Wells Fargo Bank, N.A.,*
  617 F. App'x 261 (4th Cir. 2015) .................................. 25

*Jefferson Cnty., Ala. v. Acker,*
  527 U.S. 423 (1999) ................................................ 55

*Johnson v. Am. Towers, LLC,*
  781 F.3d 693 (4th Cir. 2015) .................................... *passim*

*Jones v. Wells Fargo Co.,*
  671 F. App'x 153 (4th Cir. 2016) .................................. 13

*Kinley v. Husqvarna Consumer Outdoor Prods., N.A., Inc.,*
  No. 5:18-cv-01845-CMC, 2018 WL 4403391
  (D.S.C. Sept. 17, 2018) ............................................ 19

*Kircher v. Putnam Funds Tr.,*
  547 U.S. 633 (2006) ................................................ 15

*Kueilin Lu Tu v. U-Haul Co. of South Carolina,*
  333 F. Supp. 3d 576 (D.S.C. 2018) ................................ 37

*Lapkoff v. Wilks,*
  969 F.2d 78 (4th Cir. 1992) ....................................... 57

*Lawing v. Univar, USA, Inc.,*
  781 S.E.2d 548 (S.C. 2015) ........................................ 31

*Livingston v. Noland Corp.,*
  362 S.E.2d 16 (S.C. 1987) ......................................... 32

*Marshall v. Manville Sales Corp.*,
    6 F.3d 229 (4th Cir. 1993) ............................................................. 13, 17

*Martin v. Norfolk & W. Ry. Co.*,
    43 F.2d 293 (4th Cir. 1930) .................................................................. 16

*Massachusetts v. Exxon Mobil Corp.*,
    462 F. Supp. 3d 31 (D. Mass. 2020) ................................................. 2, 56

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) ........................................................ *passim*

*Maxtena, Inc. v. Marks*,
    No. CIV.A. DKC 11-0945, 2012 WL 113386
    (D. Md. Jan. 12, 2012) .......................................................................... 46

*Mayes v. Rapoport*,
    198 F.3d 457 (4th Cir. 1999) ................................................................ 48

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    388 F. Supp. 3d 538 (D. Md. 2019) ........................................................ 1

*McFadden v. Federal National Mortgage Association*,
    525 F. App'x 223 (4th Cir. 2013) ......................................................... 23

*McKean v. Wal-Mart Stores, Inc.*,
    No. Civ.A.2:05 0176, 2005 WL 1785260
    (S.D.W. Va. July 26, 2005) ............................................................ 46, 47

*Minnesota v. Am. Petroleum Inst.*,
    No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) .................... 2

*Nanni v. Aberdeen Marketplace, Inc.*,
    878 F.3d 447 (4th Cir. 2017) ................................................................ 18

*New Jersey v. Exxon Mobil Corp.*,
    No. 22-cv-06733 (RK) (JBD), 2023 WL 4086353
    (D.N.J. June 20, 2023) ............................................................................ 2

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ........................................................................ 57, 60

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ............................................................................. 60

*Putnam v. Wake Christian Academy*
No. 6:19-2136-TMC-KFM, 2019 WL 8375930
(D.S.C. Nov. 25, 2019) ........................................................ 24

*Racklin v. Zeta Global Corp.*,
No. 22-2077, 2023 WL 5165281 (4th Cir. Aug. 11, 2023) ................... 61

*Rhode Island v. Chevron Corp.*,
393 F. Supp. 3d 142 (D.R.I. 2019) ......................................... 1

*Schifanelli v. Jourdak*,
2021 WL 100712 (D. Md. Jan. 12, 2021) ................................... 58

*Scott v. United States*,
328 F.3d 132 (4th Cir. 2003) .............................................. 25

*Shelley v. Kraemer*,
334 U.S. 1 (1948) ........................................................ 58

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
988 F.3d 690 (4th Cir. 2021) ............................................. 55

*Stoney Marine Int'l Ltd. v. Arthur J. Gallagher & Co.*,
No. 2:16-CV-1154-DCN, 2016 WL 7334862 (D.S.C. Dec. 19, 2016) .... 50

*Tabor v. Freightliner of Cleveland, LLC*,
388 F. App'x 321 (4th Cir. 2010) ......................................... 62

*Tayal v. Bank of N.Y. Mellon*,
No. 20-1790, 2022 WL 563240 (4th Cir. Feb. 24, 2022) ..................... 17

*Timpson v. Anderson Cnty. Disabilities and Special Needs Bd.*,
31 F.4th 238 (4th Cir. 2022) ............................................. 53

*U.S. v. Dunkel*,
927 F.2d 955 (7th Cir. 1991) ............................................. 54

*Willard v. United Parcel Serv.*,
413 F. Supp. 2d 593 (M.D.N.C. 2006) ..................................... 16

## Statutes

28 U.S.C. § 1331 ........................................................ 7, 10

28 U.S.C. § 1332(a) ........................................................ 7

28 U.S.C. § 1442.................................................................5, 7, 12, 51, 55

47 U.S.C. § 332(c)(3)(A) ....................................................................36

**Rules**

Fed. R. Civ. P. 56(e) ...........................................................................46

Fed. R. Evid. 201.................................................................................37

Fed. R. App. P. 34(a)(2) ...................................................................6, 61

## INTRODUCTION

Plaintiff the City of Charleston brought this action in South Carolina state court, asserting South Carolina common-law and statutory claims for public and private nuisance, negligent and strict liability failure to warn, trespass, and violations of the South Carolina Unfair Trade Practices Act. The City seeks to rectify local injuries caused by Defendants' decades-long campaign to discredit the science of global warming, conceal the dangers posed by their fossil fuel products, and misrepresent their role in responding to the climate crisis.

For over three years, the City's case has been delayed by Defendants' improper removal. Defendants' removal arguments have now been unanimously rejected by courts of appeals in seven circuits and fifteen district courts in substantially similar cases, including this Court and the court below.[1] In this appeal, Defendants scrape the bottom of the

---

[1] *See, e.g.*, *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *aff'd*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *Cnty. of Santa Cruz v. Chevron Corp.*, 3:18-cv-00450-VC, Dkt. 142 (July 10, 2018), *aff'd*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *as amended* (June 20, 2019), *aff'd*, 31 F.4th 178 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *aff'd sub nom. Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796

barrel in search of a different result. The Court should affirm remand and return this case to proceed on the merits in the proper jurisdiction.

The district court below correctly found that the two non-diverse defendants, Brabham Oil Co. and Piedmont Petroleum Corp. ("resident Defendants"), are not fraudulently joined. This Court's task on appeal is straightforward because "a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . uncertain questions of law and fact," and the standard of review is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss" for failure to state a claim. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424–25 (4th Cir. 1999). There

(2023); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019), *aff'd*, 25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City & Cnty. of Honolulu v. Sunoco LP*, Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021), *aff'd*, 39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021), *aff'd*, 63 F.4th 703 (8th Cir. 2023), *pet. cert. docketed*, No. 23-168 (Aug. 22, 2023); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021), *aff'd*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191 (D.N.J. 2021), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), *aff'd sub nom. City of Hoboken*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *City of Annapolis v. BP P.L.C.*, Nos. 21-772, 21-1323, 2022 WL 4548226 (D. Md. Sept. 29, 2022), *appeal filed*, No. 22-2082 (4th Cir. Oct. 14, 2022); *City of Oakland v. BP P.L.C.*, Nos. C 17-06011 WHA, C 17-06012 WHA, 2022 WL 14151421 (N.D. Cal. Oct. 24, 2022), *appeal filed*, No. 22-16810 (9th Cir. Nov. 25, 2022); *District of Columbia v. Exxon Mobil Corp.*, 640 F. Supp. 3d 95 (D.D.C. 2022), *appeal filed*, No. 22-7163 (D.C. Cir. Nov. 30, 2022); *New Jersey v. Exxon Mobil Corp.*, No. 22-cv-06733 (RK) (JBD), 2023 WL 4086353 (D.N.J. June 20, 2023).

are no findings of fact to review because courts resolve all issues of fact in the plaintiff's favor. *Id.* at 424. And this Court need not—and should not—delve into questions of state law on the merits because "all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists." *Id.* at 425. To affirm, this Court need identify only a "glimmer of hope" for the City, and "the jurisdictional inquiry ends." *Id.* at 426. The City's complaint easily clears that low bar.

The fundamental flaw in Defendants' argument is that the two declarations on which they rely do *not* constitute an "undisputed factual record" demonstrating fraudulent joinder. *See* Defendants-Appellants' Opening Brief ("AOB") 31[2]; J.A.1545–1550 (declarations). Courts have found fraudulent joinder in cases where simple, discrete, easily verifiable facts conclusively settled that assigning liability to a non-diverse defendant would be legally impossible—for example, where a defendant could not be liable because it was not licensed to operate in the county where its alleged negligence occurred. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). The non-diverse defendants' liability

---

[2] All record pincites are to the pagination provided by the parties. Unless otherwise noted, all "Dkt." cites are to the district court docket, No. 2:20-cv-03579.

cannot be so easily and conclusively negated here; rather, their liability will turn on decades of those defendants' potentially relevant conduct, corporate knowledge, and relationships with other members of the fossil-fuel industry including trade organizations. The two conclusory declarations Piedmont and Brabham submitted scarcely exceed a page each, and do not negate all possibility of recovery against them.

Contrary to Defendants' arguments, the district court did consider the two declarations and correctly held that they do not come close to shouldering Defendants' "heavy burden" to demonstrate fraudulent joinder. *See Hartley*, 187 F.3d at 424. The declarations are general and vague, and constitute little more than a general denial of liability. They provide no information about what if any documents or persons the declarants called on to reach their conclusions. They omit entire topics relevant to the Defendants' liability on multiple causes of action, which is itself fatal to their fraudulent joinder challenge. They say nothing about Piedmont's or Brabham's knowledge concerning climate change over time; their business relationships to the other named defendants; what if any actions industry associations took on their behalf; or their advertising of fossil fuel products. The declarations do not even attempt

to rebut the City's failure-to-warn claims—Defendants' Opening Brief ignores them entirely, moreover, and only contends incorrectly that the Complaint does not sufficiently allege "involvement by Brabham or Piedmont in any alleged disinformation campaign." AOB21–22. Defendants fail to show there is "*no possibility*" the City will be able to establish any cause of action against Piedmont and Brabham in state court. *Hartley*, 187 F.3d at 424.

The district court below also correctly held that Defendants' theories of removal under the federal officer removal statute and the *Grable* doctrine are meritless. *See* 28 U.S.C. § 1442(a)(1); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). As to federal officer removal, Defendants purport to advance new evidence and a new legal theory not already rejected by this Court in *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022). But none of the new material shows conduct under federal direction that is "related to" Defendants' decades long campaign of climate deception central to the Complaint, and the court below correctly ruled that Defendants still failed to satisfy the statute. Defendants have not adequately presented their new evidence and legal theory to this Court for review, moreover,

and the Court can affirm for that reason alone. The *Grable* doctrine, which applies only to a "slim category" of cases, likewise does not confer jurisdiction. *Id.* at 208. The court below correctly rejected Defendants' novel theory that First Amendment defenses can transform state-law claims into federal ones as unsupportable and against the "clear weight of authority." J.A.1560.

Finally, the Court should reject Defendants' attempt to preserve additional arguments by summarily listing them, without even "tak[ing] a passing shot at the issue[s]." *Grayson O Co. v. Agadir International LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quotations omitted).

Under Federal Rule of Appellate Procedure 34(a)(2) and Local Rule 34.2, this Court should find that oral argument will not significantly aid its decision-making, as this appeal presents no complex issue that has not been argued in detail in the papers. Every issue Defendants raise apart from fraudulent joinder was authoritatively decided by this Court in *Baltimore*, or is presented in two pending consolidated appeals involving many of the same defendants, scheduled to be heard by this Court on December 6, 2023. *See Anne Arundel County v. BP P.L.C.*, No. 22-2082 (4th Cir.); *City of Annapolis v. BP P.L.C.*, No. 22-2101 (4th Cir.).

The City therefore requests that the Court decide this appeal on the briefs, and forgo oral argument.

## ISSUES PRESENTED

I. Whether the district court lacked subject-matter jurisdiction under 28 U.S.C. § 1332(a) because there is not complete diversity and Defendants failed to demonstrate there is "*no possibility* that the [City] would be able to establish a cause of action" against the non-diverse defendants in state court. *Hartley*, 187 F.3d at 424; J.A.1560–1562.

II. Whether the district court lacked subject-matter jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442, because none of the actions Defendants' purportedly took under federal authority relate to the conduct challenged in the Complaint. J.A.1556–559.

III. Whether the district court lacked federal-question jurisdiction under 28 U.S.C. § 1331 because no substantial, disputed issue of federal law is necessarily raised in the Complaint. J.A.1559–1560.

## STATEMENT OF THE CASE

### I. The Complaint

As alleged in the Complaint, Defendants have known for decades that their fossil fuel products, when used as intended, create greenhouse

gas emissions that change the Earth's climate, warm the oceans, and cause sea levels to rise. J.A.0137; J.A.0139; J.A.0193–0218. Armed with that knowledge, Defendants evaluated the impacts of climate change on their own infrastructure, invested to protect their own assets from rising seas and more extreme storms, and developed technologies to profit in a warmer world. J.A.0193–0218; J.A.0237–0239.

Instead of warning consumers or the public, however, Defendants embarked on a sophisticated campaign of disinformation to cast doubt on the science of global warming, while concealing and misrepresenting their fossil-fuel products' role in causing it. J.A.0219–0237. That deception inflated global consumption of fossil fuels, which increased greenhouse gas emissions, exacerbated climate change, and created hazardous environmental conditions in the City of Charleston. J.A.0140–0141. Defendants consistently failed to warn consumers and the public about their products' known dangers, and their failure to warn and tortious promotion were a substantial factor in bringing about the City's climate-related harms, which include damage to property and infrastructure from rising seas, flooding, beach loss, and more frequent

and intense extreme weather events including hurricanes, heat waves, and "rain bombs." J.A.0249–0255.

The City sued Defendants in South Carolina state court, pleading state-law claims for public and private nuisance, negligent and strict liability failure to warn, trespass, and violations of South Carolina's Unfair Trade Practices Act. J.A.0255–0272. The Complaint seeks damages for the harms caused by Defendants' deception campaigns and failure to warn; disgorgement of profits generated by Defendants' wrongful conduct; and equitable relief to abate the local environmental hazards resulting from Defendants conduct. J.A.0272.

## II.    Removal and Federal Court Proceedings

After the City filed its Complaint, Defendants immediately removed, asserting eight grounds for federal jurisdiction. J.A.0030–0032. The City filed a motion to remand, which the district court granted. J.A.1551–1564. The district court explained that this Court's *Baltimore* decision "governs and forecloses" all Defendants' bases for removal other than "three new arguments": (1) an argument for federal-officer jurisdiction based on what Defendants characterize as an "expanded evidentiary record" that was not before the Court in *Baltimore*, (2) "a

new argument for *Grable* jurisdiction" premised on Defendants' potential First Amendment defenses, and (3) an argument based on the doctrine of fraudulent joinder. J.A.1555 (cleaned up). Defendants "abandon[ed] all but the three new arguments in their response in opposition to" the City's motion to remand. *Id.* at n.1.

The district court rejected federal officer removal, finding that the "expanded record . . . [did] not address the legal deficiency identified" in *Baltimore*, "because none of the new examples of federal authority relate to the alleged tortious misconduct." J.A.1558. The court also declined to "deviate from the clear weight of authority" rejecting Defendants' argument that federal question jurisdiction attached because "the Court will be required to construe the First Amendment when considering Plaintiffs claims" by way of Defendants' potential defenses. J.A.1560.

Finally, the district court rejected Defendants' fraudulent joinder arguments because Defendants failed to show "that there is no possibility the City would be able to establish its claims against Piedmont or Brabham." J.A.1561. The district court acknowledged it was "not bound by the allegations of the pleadings," and considered the declarations submitted by non-diverse defendants Piedmont and Brabham, which

broadly assert that "they have not played any role in any marketing campaign relating to greenhouse gases, global warming, or the science of climate change." J.A.1561. The court held that the declarations left relevant "contested facts" unresolved, and declined to "act as a fact finder in deciding jurisdictional questions." J.A.1562. Because "contested facts should generally not provide the basis for finding of fraudulent joinder" and the City's allegations "possibly [tie] Brabham and Piedmont to the disinformation campaign that the City alleges causes its harm," the court concluded that "Defendants ha[d] not met their heavy burden to show fraudulent joinder." J.A.1562.

Because Defendants' "new arguments . . . fail to provide grounds for federal jurisdiction," the court granted remand. J.A.1555.

## SUMMARY OF ARGUMENT

Defendants cannot show that the two non-diverse defendants are fraudulently joined, because they fail to demonstrate there is "no possibility" the City could establish a cause of action against them. *Hartley*, 187 F.3d at 424. At least two reasons support affirmance.

First, the City adequately pleaded its claims against the non-diverse defendants. Resolving all legal and factual issues in favor of the

11

City, the Complaint sufficiently connects Piedmont and Brabham to the disinformation campaigns underlying the City's nuisance claims. Additionally, the City adequately pleaded its failure-to-warn and Unfair Trade Practices Act claims, which Defendants' briefing does not address.

Second, Piedmont's and Brabham's self-serving declarations fall well short of negating all possibility of relief. This is definitively not the type of case that can be resolved with conclusory declarations scarcely exceeding a page in length. The declarations are far too vague to address the decades of potentially relevant conduct at issue, and they completely omit critical factual issues necessary to determine liability. Contrary to Defendants' arguments, the district court *did* consider the declarations, but correctly determined that contested facts remain at issue and that Defendants fail to carry their heavy burden.

Defendants' additional removal theories under the federal officer removal statute, 28 U.S.C. 1442, and the *Grable* doctrine, have been rejected by courts nationwide, including this Court. Defendants cannot show they should apply here. None of Defendants' purported federally-directed conduct relates to the "sophisticated disinformation campaign" and "concealment and misrepresentation of the[ir] products' known

dangers" that the City alleges as the basis for liability. *See Baltimore*, 31 F.4th at 233–34. Further, Defendants' potential First Amendment defenses do not support removal under *Grable*, 545 U.S. 308, because the First Amendment does not insert additional affirmative elements into the City's state-law claims and does not supply grounds for jurisdiction.

## ARGUMENT

## I.    Standard of Review

This Court reviews "questions of subject matter jurisdiction de novo, including those relating to the propriety of removal." *Dixon v. Coburg Dairy Inc.*, 369 F.3d 811, 815–16 (4th Cir. 2004) (cleaned up). "In light of well-established federalism concerns," however, "removal jurisdiction must be strictly construed, and 'if federal jurisdiction is doubtful, a remand to state court is necessary.'" *Jones v. Wells Fargo Co.*, 671 F. App'x 153, 154 (4th Cir. 2016) (quoting *Dixon*, 369 F.3d at 816). Those presumptions comport with "Congress' clear intention to restrict removal and to resolve all doubts . . . in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). As such, this threshold "jurisdictional inquiry is not the

appropriate stage of litigation to resolve . . . uncertain questions of law and fact." *Hartley*, 187 F.3d at 425.

## II.    Defendants Fail to Establish Fraudulent Joinder.

### A.    Defendants bear the burden to show the City has no possibility of establishing any cause of action.

Defendants bear a "heavy burden" to establish fraudulent joinder. *Hartley*, 187 F.3d at 424. Because Defendants do not argue that the City's jurisdictional allegations depend on "outright fraud," Defendants can establish fraudulent joinder only if they demonstrate that "there is *no possibility* that the [City] would be able to establish a cause of action against the in-state defendant[s] in state court." *Id.* (cleaned up)

This "no possibility" standard "heavily favors" the City. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). When adjudicating fraudulent joinder, a court must "resolv[e] all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424. "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss . . . ." *Id.* The plaintiff does not bear the burden "to show that [its] claims may succeed"; rather, defendants must "negate all possibility of recovery." *Id.* at 425. This Court has cautioned that district courts must not "delv[e] too far into the merits" when considering

14

fraudulent joinder, because "a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . uncertain questions of law and fact." *Id.* Courts must instead reject a fraudulent joinder challenge if there is a "glimmer of hope" that the plaintiff will prove any claim. *Id.* at 426. "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.*[3]

Defendants badly misrepresent governing Circuit authority, contending that a defendant may establish fraudulent joinder merely by showing that a plaintiff "has no 'colorable ground' to establish a cause of action," *or* has "no real [subjective] intention to get a joint judgment." AOB.16. In the decision on which Defendants rely, this Court stated that "a joinder is fraudulent if there is no real intention to get a joint judgment, *and* there is no colorable ground for so claiming." *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003

---

[3] As this Court has explained, the "no possibility" standard furthers the goal that "courts should minimize threshold litigation over jurisdiction" and allow merits litigation to proceed in the proper forum as quickly as possible. *Id.* at 425. "The policy of Congress opposes interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 640 (2006) (quotation omitted). Conversely, "permit[ting] extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules" by encouraging courts to resolve contested issues before determining whether they have the authority to do so. *Hartley*, 187 F.3d at 425.

(4th Cir. 1990) (cleaned up and emphasis added).[4] Regardless, the Court has not repeated that formulation of the rule in the last thirty years, and district courts have since held that "a close examination of *AIDS Counseling* and the Fourth Circuit's subsequent decisions concerning fraudulent joinder reveals that the 'no possibility' standard—not the 'real intention' standard—is the correct standard." *Allard v. Laroya*, 163 F. Supp. 3d 309, 311 (E.D. Va. 2016). *See also Cnty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-cv-1947-BHH, 2018 WL 8800188, at *6 (D.S.C. Aug. 20, 2018) ("[A] plaintiff's intention not to seek a judgment alone should not be a ground for a finding of fraudulent joinder. There also must be the absence of a basis for a claim."); *cf., e.g.*, *Willard v. United Parcel Serv.*, 413 F. Supp. 2d 593, 599 (M.D.N.C. 2006) ("[T]he Fourth Circuit would seem to reject using a plaintiff's expressed subjective intention alone as a ground for a finding of fraudulent joinder.").

---

[4] The other cases Defendants cite, AOB16–17, in addition to being 90 or more years old, stand for the same rule. *See Chi., R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913) ("[W]e have not to consider more than whether there was a real intention to get a joint judgment, *and* whether there was a colorable ground for it shown as the record stood when the removal was denied." (emphasis added)); *Martin v. Norfolk & W. Ry. Co.*, 43 F.2d 293, 296 (4th Cir. 1930) (defendant may be fraudulently joined where claims against it are "made without any purpose to prosecute the action in good faith against the resident defendant *and* with the purpose of fraudulently defeating the right of removal") (emphasis added).

In this circuit, a removing defendant alleging fraudulent joinder much show either "outright fraud in the plaintiff's pleading of jurisdictional facts," or that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993); *Tayal v. Bank of N.Y. Mellon*, No. 20-1790, 2022 WL 563240, at *3 (4th Cir. Feb. 24, 2022) (same). Because the Defendants do not argue the City's allegations are fraudulent, they must show "there is *no possibility* that" the City can succeed in state court. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (quotation omitted); *Tayal v. Bank of N.Y. Mellon*, No. 20-1790, 2022 WL 563240, at *3 (4th Cir. Feb. 24, 2022) (same). They cannot make this showing.

### B. The allegations in the Complaint provide far more than a "glimmer of hope" for the City.

To defeat Defendants' fraudulent joinder challenge, the Complaint need only establish a "glimmer of hope" against Piedmont and Brabham. *Hartley*, 187 F.3d at 426. The City's complaint does that and more. First, as the district court determined, the Complaint sufficiently connects Piedmont and Brabham to the disinformation and deception campaigns central to City's claims. *See* J.A.1561–1562. Second, although not

addressed by the district court, the Complaint adequately alleges that Piedmont and Brabham failed to warn about the dangers of their fossil fuel products, *see* J.A.1562 n.2, and violated the UTPA. Finally, Defendants' speculation about the City's intent to collect on a judgment against these defendants—based solely on the fact that other plaintiffs have not sued Piedmont and Brabham in other jurisdictions—does not support their fraudulent joinder argument.

The level of specificity required of a pleading to demonstrate a "glimmer of hope" is exceedingly low. This Court has emphasized that the fraudulent joinder standard is "even more favorable to the plaintiff than the standard for ruling on a [12(b)(6)] motion to dismiss." *E.g.*, *Johnson*, 781 F.3d at 704; *Hartley*, 187 F.3d at 424. Rule 12(b)(6)'s "plausibility standard" in turn does not require a plaintiff "to plead factual allegations in great detail," *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017), or to "forecast evidence sufficient to prove a claim," *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (quotations omitted). Courts in this Circuit routinely granted remand over fraudulent joinder challenges when faced with allegations far more "bare-boned" than those against Piedmont and Brabham. *See*

*Kinley v. Husqvarna Consumer Outdoor Prods., N.A., Inc.*, No. 5:18-cv-01845-CMC, 2018 WL 4403391, at *3 (D.S.C. Sept. 17, 2018); *see also, e.g., Boyer v. Hankook Tire Co., Ltd.*, No. 5:14CV165-RLV, 2015 WL 413793, at *7 (W.D.N.C. Jan. 30, 2015) (rejecting fraudulent joinder arguments where the Complaint "suggest[ed] the *possibility*" of liability and the "underlying factual issues ha[d] yet to be fleshed out"); *Carter v. Watkins*, No. WDQ-12-2813, 2013 WL 2139504, at *5 (D. Md. May 14, 2013) (rejecting fraudulent joinder argument even where "the factual context of the plaintiffs' claim [was] not entirely clear").

### 1. The Complaint sufficiently connects Piedmont and Brabham to the disinformation and deception campaigns that caused the City's injuries.

At minimum, based on the allegations in the Complaint, a South Carolina court could easily find Piedmont and Brabham liable for their participation in the deception campaigns central to the City's claims. The Complaint alleges that Brabham operated in the South Carolina fossil fuel industry for nearly a century. J.A.0144 at ¶ 20(f). During that time, Brabham had close ties with major actors in the deception campaigns who are also named in the Complaint: Brabham served as a commissioned agent in South Carolina for Standard Oil (a predecessor-

in-interest to Exxon), and a wholesale jobber for Phillips Petroleum Company, Chevron, BP, and Shell into the 1990s.[5] *Id.* Moreover, the Complaint alleges Brabham has been a member of the Society of Independent Gasoline Marketers of America ("SIGMA"), a national trade association representing fuel marketers, suppliers, and chain retailers. J.A.0184 at ¶ 33(e). The Complaint alleges that SIGMA is one the industry associations that "conducted early climate research, distributed their findings to Defendants, and engaged in a long-term course of conduct to misrepresent, omit, and conceal the dangers of Defendants' fossil fuel products." J.A.0181 ¶ 33.

Similarly, the Complaint adequately connects Piedmont to the misinformation and deception campaigns that harmed the City. Piedmont owns and operates approximately 35 service stations branded with the "Citgo" mark in South Carolina. J.A.0147 at 22(d). Through Citgo, the Complaint connects Piedmont to the American Petroleum Institute—a major funder and disseminator of false climate science.

---

[5] Defendants suggest that the City should have explained the meaning of the terms "commissioned agent" and "wholesale jobber." AOB21. However, the City is not required to define terms in its Complaint, and Defendants each have intimate knowledge of how the fossil fuel industry is structured. A jobber is a wholesaler or contractor. *Jobber*, *Black's Law Dictionary* (11th ed. 2019).

J.A.0147 ¶ 22(e). Further, the Complaint alleges Piedmont has a leadership role in the South Carolina Convenience & Petroleum Marketers Association ("SCCPMA"), a division of the Petroleum Marketers Association of America ("PMAA"). *Id.* The Complaint identifies the PMAA as a founding member of the Global Climate Coalition and one of the industry associations and front groups that "engaged in a long-term course of conduct to misrepresent, omit, and conceal the dangers of Defendants' fossil fuel products." J.A.0181 ¶ 33, J.A.0185 ¶ 33(g), J.A.0147 ¶ 22(e).

Having situated Piedmont and Brabham within the deception campaigns, the City then plausibly asserts that these companies—together with the other named Defendants—"actively supervised, facilitated, consented to, and/or directly participated in the misleading messaging." J.A.0181 ¶ 33. The Complaint provides specific examples where Defendants—both individually and collectively through industry groups—funded, facilitated, and implemented strategies to obscure their fossil fuel products' role in causing global warming and its associated impacts. *See, e.g.*, J.A.0224–0225 ¶¶ 105–07 (describing campaign by the Information Council for the Environment); J.A.0231–0232 ¶ 114 (listing

deception "strategies that Defendants individually and collectively utilized"); J.A.0232–0233 ¶ 116 ("[t]he Global Climate Coalition . . . funded deceptive advertising campaigns and distributed misleading material to generate public uncertainty around the climate debate"); J.A.0233–0234 ¶ 118 (identifying Defendants' "strategy" to "bankroll [contrarian] scientists"); J.A.0234–0235 ¶ 121 (describing how "the Global Climate Science Team" drew membership from leaders in the deception campaign, including API, Exxon, Chevron, and Southern Company). Finally, the Complaint traces the causal link between this wide-ranging conduct and the City's injuries. J.A.0188–0192 ¶¶ 39–53. Those allegations provide more than a "glimmer of hope" that the City will obtain a judgment. *Johnson*, 781 F.3d at 704.

Defendants incorrectly suggest that Piedmont's and Brabham's liability is derived solely from their passive membership in trade associations that allegedly engaged in deception. AOB22. But the Complaint alleges that the third-party industry associations and front groups acted "on behalf of and under the supervision and/or control of Defendants" and that "Defendants actively supervised, facilitated, consented to, and/or directly participated in the misleading messaging"

22

of these associations and groups. ¶ 33. At the very least, there are open factual questions about the relationship between Piedmont and Brabham and these trade associations.

Nor do any of Defendants' cited cases bolster their fraudulent joinder challenge. *See* AOB23–24. The complaint in each case was egregiously, plainly deficient in its allegations against the resident defendant. In *Flores v. Ethicon, Inc.,* "[t]he only theory of liability" the plaintiff asserted on appeal was "not alleged in the complaint" at all, so it was "unsurprising . . . that the complaint fail[ed] to allege two necessary elements of that theory." 563 F. App'x 266, 269 (4th Cir. 2014). In *McFadden v. Federal National Mortgage Association*, a foreclosure suit, the claims against the non-diverse defendant were foreclosed as a matter of law because of that defendants' status as a third-party trustee, and because that defendant was not named in one of the causes of action. 525 F. App'x 223, 227–229 (4th Cir. 2013).

Finally in *Putnam v. Wake Christian Academy* (in essence a child custody dispute where the plaintiff brought defamation and conspiracy claims), the pro se plaintiff added the non-diverse defendant *after* the case was removed and after the defendants filed a motion to dismiss for

lack of subject matter jurisdiction. *See* No. 6:19-2136-TMC-KFM, 2019 WL 8375930, at *1 (D.S.C. Nov. 25, 2019), *report and recommendation adopted,* No. 6:19-cv-2136-TMC, 2020 WL 582236 (D.S.C. Feb. 6, 2020). The amended complaint "contain[ed] no information about [the in-state defendant's] alleged defamatory statements," and in response to that defendant's motion for a more definite statement the plaintiff stated only that the defendant was "well aware of his actions individually, and in complicity with other [d]efendants." *Id.* at *3. On those facts, the plaintiff could not present even a glimmer of hope of recovery.

The Complaint here provides far more than a "glimmer of hope" for the City, and as discussed in Part I.C, *infra*, Piedmont's and Brabham's declarations fail to foreclose the City's claims.

### 2. The City adequately pleaded its failure-to-warn and UTPA claims against Piedmont and Brabham.

Even if this Court were to find "no possibility" Piedmont and Brabham can be liable for the City's nuisance or trespass claims, it should still affirm remand because the City adequately pleaded its failure-to-warn and Unfair Trade Practices Act ("UTPA") claims against those defendants. The district court declined to address this issue, finding that

the City's allegations sufficiently tied Piedmont and Brabham to the disinformation campaigns to support the City's nuisance claims. J.A.1562 & n.2. However, this Court may "affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264 (4th Cir. 2015) (quoting *Scott v. United States,* 328 F.3d 132, 137 (4th Cir. 2003)).

### a. The City's Complaint alleges facially adequate failure-to-warn and UTPA claims.

Among its claims, the City brings common-law causes of action for strict liability failure to warn and negligent failure to warn, and claims under the South Carolina UTPA. *See* J.A.0263–0267 at ¶¶ 172–96, J.A.0269–0272 at ¶¶ 206–217. The complaint clearly alleges these claims "Against All Defendants," including Piedmont and Brabham. *See* J.A.0143–0144 at ¶ 20; J.A.0147 at ¶ 22; J.A.0263; J.A.0265; J.A.0269. These claims allege that Defendants, including Piedmont and Brabham, "knew or should have known, based on information passed to them from their . . . affiliates, [and] from the non-party trade associations . . . of the climate effects inherently caused by the normal use and operation of their fossil fuel products," and "failed to adequately warn any consumers or

any other party of the climate effects that inevitably flow from the intended use and foreseeable misuse of their fossil fuel products." J.A.0263–0271 at ¶¶ 175, 177, 187, 189, 209–214.

The City alleges that Piedmont and Brabham knew of the dangers of their fossil fuel products and failed to provide adequate warnings of those dangers. As described above, the Complaint alleges that Brabham has operated in South Carolina since 1929, and has had business relationships with Standard Oil, Phillips Petroleum Company, Chevron, BP, and Shell "into the 1990s." J.A.0144 at ¶ 20(f). The Complaint also asserts that Brabham is a member of SIGMA, a "national trade association" that represented "more than 50 percent of the petroleum retail market" and that "engaged in a long-term course of conduct to misrepresent, omit, and conceal the dangers of Defendants' fossil fuel products." J.A.0181–0186 at ¶ 33, J.A.0184 at ¶ 33(e). Drawing all factual and legal inferences in the City's favor, it is at least plausible that Brabham "knew or should have known, based on information passed to" it by Standard Oil, Phillips Petroleum Company, Chevron, BP, Shell, or SIGMA, "of the climate effects inherently caused by the normal use and

26

operation of their fossil fuel products," and failed to adequately warn consumers or the public of those dangers. J.A.0263–0264 ¶¶ 175, 177.

The Complaint likewise alleges that Piedmont operates approximately 35 gas stations under branding that it licenses from Citgo, a member of the American Petroleum Institute. J.A.0147 ¶ 22(d), (e). The Complaint further alleges that Piedmont has a leadership role with the SCCPMA, a division of the PMAA—and the Complaint further establishes the PMAA among the entities that conducted early climate research and distributed their findings to Defendants. J.A.0147 ¶ 22(e); J.A.0181–0186 ¶¶ 33, 33(g). At minimum, it is at least plausible that Piedmont knew or should have known about the dangers from fossil fuel products, based on information obtained from its business affiliates, but failed to provide adequate warnings. Thus, the Complaint establishes more than the necessary "glimmer of hope" for these claims.

### b. Neither Defendants' arguments nor the resident Defendants' declarations rebut the City's failure-to-warn or UTPA allegations.

Defendants' Opening Brief does not discuss the City's failure-to-warn and UTPA claims at all, except as background. *See, e.g.*, AOB8. As the City pointed out below, Defendants also did not address those claims

in their Notice of Removal filed in 2020, their Opposition to the City's Motion to Remand filed in 2021, or their Supplemental Answering Brief in Opposition to the City's Renewed Motion to Remand filed in 2022. *See* Reply in Support of Motion to Remand, Dkt. 116 at 40 ("Piedmont and Brabham's Opposition does not even discuss or attempt to rebut the City's failure to warn and Unfair Trade Practices Act claims."); Supplemental Reply in Support of Motion to Remand, Dkt. 142 at 15 (same). The resident Defendants first attempted to address those claims in a supplemental sur-reply filed in December 2022. *See* Motion for Leave to File sur-reply, Dkt. 143; Sur-Reply in Opposition to Renewed Motion to Remand, Dkt. 143-1; Opposition to Motion to File Sur-Reply, Dkt. 147.[6] Defendants do not press those belated arguments in this Court. Because the failure-to-warn and UTPA claims present a valid alternative basis to affirm, however, the City addresses them here.

---

[6] The district court did not rule on the resident Defendants' Motion for Leave to File a Sur-Reply, so the City did not substantively respond to the Sur-Reply arguments below. The district court's order granting remand nonetheless indicates that the court considered the arguments made in the sur-reply, but held that it "need not address the[m]" because it found allegations with respect to the City's other claims defeated fraudulent joinder. J.A.1562 n.2; *see also* J.A.1551 (referencing sur-reply among the parties' "supplemental briefing").

Before the district court, Piedmont and Brabham made three arguments on sur-reply concerning the City's failure-to-warn claims. None of these arguments remotely "negate all possibility of recovery" under the stringent standard for fraudulent joinder. *Hartley*, 187 F.3d at 425. Significantly, because "all legal and factual issues must be resolved in favor of the plaintiff," Defendants must show that South Carolina state courts have "squarely foreclosed" the City's claims, which they have not done. *See Baltimore Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 920, 923 (4th Cir. 2007) (citing *Hartley*, 187 F.3d at 424–25). Moreover, the resident Defendants' arguments delve deeply into the merits and constitute exactly the type of onerous "threshold litigation over jurisdiction" that "thwarts the purpose of jurisdictional rules." *Hartley*, 187 F.3d at 425.

<u>First</u>, contrary to Defendants' argument below, the City's claims are not squarely foreclosed based on the City's status as a "user" or "consumer" of Defendants' fossil fuel products. The Complaint alleges that the City is a consumer of Defendants' fossil fuel products, and that Defendants breached their duty of care to the City by failing to adequately warn the City of the climate effects of their fossil fuel

29

products. J.A.0266 at ¶ 189. Although Piedmont and Brabham asserted below that they do not operate gas stations in Charleston, Dkt. 143-1 at 4, this hardly establishes the City has never been a user or consumer of their products. For instance, Piedmont represents that it has operated a gas station in "nearby North Charleston, SC," J.A.0128—which directly borders Charleston and even encompasses Charleston International Airport—and it does not prove that the City or its agents and employees have never purchased Piedmont's products from this or any other location. The resident Defendants merely raise unresolved factual questions that cannot support a finding of fraudulent joinder.

Even assuming the City never directly purchased Piedmont and Brabham's products, Defendants have not shown that the City's claim would be completely foreclosed. The resident Defendants conceded below that under South Carolina law "the definition of 'user' or 'consumer' is not limited to the actual purchasers or ultimate users of a product." Dkt. 143-1 at 4. Defendants rely on *Lawing v. Univar, USA, Inc.* for their argument that the City is not a "user" or "consumer" for purposes of South Carolina products liability law, but that decision explicitly states that "courts' determination of who constitutes a 'user'" should be a "case-

by-case analysis." *See* 781 S.E.2d 548, 556 (S.C. 2015). Thus, *Lawing* (which involved very different factual circumstances, namely, a chemical fire at an industrial plant) demonstrates that the City's failure to warn claims *cannot* be squarely foreclosed on a jurisdictional motion before the pleadings are settled, because they will be subject to a "case-by-case analysis" on remand. *See id.*; *see also, e.g.*, *Caughman v. Atrium Fin. I, LP*, 574 F. Supp. 3d 316, 320 (D.S.C. 2021) (rejecting fraudulent joinder challenge in absence of "factually-on-point case" "squarely holding" that liability would be foreclosed in state court) (cleaned up).

The resident Defendants' other cited cases likewise undermine their argument. In the *Costco* case, the district court found that Charleston *was* a "user" under South Carolina law, even though the City was not the purchaser of the product at issue. *See Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, No. 2:21-cv-42-RMG, 2021 WL 5908758, at *5 (D.S.C. Dec. 13, 2021). And the resident Defendants' lengthy discussion below of how federal courts have applied *Washington* law only illustrates that there is no South Carolina authority that forecloses the City's claims. Dkt. 143-1 at 5–7.

<u>Second</u>, the resident Defendants' argument about a "general duty to warn third parties of potential danger" is irrelevant. Dkt. 143-1 at 7. The resident Defendants refer to a body of law concerning the duty to protect third parties from a dangerous individual. In their principal case, the question was whether the South Carolina Department of Juvenile Justice owed a duty to a victim assaulted by a juvenile delinquent on probation. *See Faile v. S.C. Dep't of Juv. Just.*, 566 S.E.2d 536, 539–40 (S.C. 2002). The government's duty to warn potential victims about a dangerous individual has nothing to do with a manufacturer's duty to warn consumers in the products liability context. *See Livingston v. Noland Corp.*, 362 S.E.2d 16, 18 (S.C. 1987) (discussing negligent failure to warn in products liability context). The scope of Defendants' duty is in any event a non-trivial question of state law that is not appropriate for resolution on a jurisdictional motion.

<u>Third</u>, the resident Defendants do not show that the City has no possibility of establishing any "unreasonably dangerous" element of its products liability claims. *See Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 326 (S.C. Ct. App. 1995). The resident Defendants cite a Seventh Circuit

decision applying *Illinois* law, which says nothing about whether South Carolina law might foreclose the City's claims here. Dkt. 143-1 at 8–9.

**3.** **The City intends to collect judgments against the Defendants in this case.**

Finally, the Court should reject Defendants' speculation that the City does not intend to collect a judgment against Brabham and Piedmont. Even if the "no intention" language from *AIDS Counseling* provided the relevant test—which it does not—the facts here are totally different. In that defamation and false-light case, the plaintiff sued the non-diverse defendant and others for statements made during a television interview. 903 F.2d at 1002–03 (4th Cir. 1990). After the case was removed, the plaintiff sought leave to amend its complaint and join the non-diverse defendant in claims concerning a completely separate television broadcast in which the non-diverse defendant played no role. *Id.* The district court denied leave to amend, finding that the amendment was requested "solely to defeat diversity and to deprive the court of jurisdiction," and this Court affirmed. *Id.* at 1003–04.

In contrast to *AIDS Counseling*, where there was a transparent *post hoc* attempt to defeat diversity, Piedmont or Brabham merely speculate that the City lacks an intention to obtain a judgment against them

because they have not been sued by *other* plaintiffs in other jurisdictions. But it is hardly surprising that *Charleston* would name *South Carolina* defendants, while Baltimore and Honolulu, for instance, do not. The City seeks to obtain a judgment from each of the Defendants.

### C. Defendants' declarations fall well short of negating all possibility of relief.

When evaluating a fraudulent joinder challenge, this Court is "only permitted, not required, to look beyond the complaint to determine the propriety of removal." *Flores*, 563 F. App'x at 269. Even if this Court opts to consider the resident Defendants' self-serving declarations, the declarations do not establish a legal and factual impossibility that the City could prevail in state court.

### 1. This is not the type of case that can be resolved with a short declaration.

This case is fundamentally different from the types of cases that a court can resolve "with the snap of a finger" based on a few paragraphs in a declaration. *See Hartley*, 187 F.3d at 425. For example, Defendants rely heavily on *Boss v. Nissan North America, Inc. See* 228 F. App'x 331, 335–36 (4th Cir. 2007); AOB28. In that car accident case, the plaintiff alleged that the non-diverse defendant Jiffy Lube was grossly negligent

"in providing partial or incomplete service to the [plaintiff's] power steering mechanism." *Id.* at 335. In support of its fraudulent joinder argument, Jiffy Lube's employee provided an affidavit establishing that Jiffy Lube never agreed to inspect the plaintiff's power steering, and performed only an oil change and breather replacement. *Id.* The plaintiff himself produced "documents showing the services that [Jiffy Lube] had . . . contracted to perform," which did not include power steering inspection or maintenance. *Id.* at 333–34. On those facts, the court determined the plaintiff clearly "[could] not succeed on his claim against Jiffy Lube." *Id.* at 335.

Piedmont and Brabham's liability cannot be dispelled with a one-line explanation like "we did an oil change, not a steering inspection." The City's Complaint alleges *decades* of relevant conduct by Piedmont and Brabham among numerous relevant actors, many of whom actively sought to obscure their wrongful conduct. The Complaint alleges, for instance, that Piedmont and Brabham should have known of the dangers of their fossil fuel products "based on information passed to them from their . . . affiliates," and then names those affiliates: Standard Oil, Phillips Petroleum Company, Chevron, BP, Shell, and Citgo. *See*

J.A.0144 at ¶ 20(f); J.A.0147 at ¶ 22(d); J.A.0187 at ¶ 35. Yet neither of the two declarations even mentions any of those affiliates, much less attempts to negate the allegations about them. Piedmont's and Brabham's liability simply cannot be disproven in a declaration that scarcely exceeding a single page and fails to address multiple central aspects of the Complaint.

Defendants' other cases are similarly distinguishable. In *Johnson v. American Towers, LLC*, a prison inmate used a contraband cellphone to order a shooting, and the victim sought to hold wireless service providers liable for his injuries because they allegedly were aware that their services "facilitated the illegal use of cellphones by prison inmates and yet failed to take steps to curb that use." 781 F.3d 693, 699 (4th Cir. 2015); AOB27. As in *Boss*, one of the non-diverse defendants was able to conclusively negate all liability by establishing a discrete ascertainable fact: it "ha[d] no federal license to provide cell phone service" in the county at issue.[7] *Id.* at 704. Not only was this fact "undisputed," but it is

---

[7] The plaintiff's claims against a second in-state defendant were "clearly preempt[ed]" by "the express language of the Communications Act," 47 U.S.C. § 332(c)(3)(A), which this Court has held preempts "state laws that 'obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage,'" including common-law tort duties. *American Towers*, 781 F.3d at 705–06. The resident defendants have not raised a similar argument here, and did not do so below.

the type of fact of which a court could properly take judicial notice. *See id.*; Fed. R. Evid. 201. Defendants' declarations here do not assert such a simple, easily provable, total defense.

Next, in *Kueilin Lu Tu v. U-Haul Co. of South Carolina*, the plaintiff, who suffered injuries in a collision with a U-Haul truck, simply sued the wrong U-Haul entity. *See* 333 F. Supp. 3d 576, 579 (D.S.C. 2018); AOB29. The plaintiff initially sued U-Haul Co. of South Carolina, but later amended the complaint to include U-Haul Co. of *North* Carolina "after being notified that [she] had named the incorrect U-Haul entity." *Id.* Unsurprisingly, the court found the South Carolina entity was fraudulently joined because the evidence—including police reports and company files—established that the truck was stolen off a lot of North Carolina entity and driven to South Carolina where it struck the plaintiff. *Id.* at 581–82. The South Carolina entity never had either title to or control over the vehicle. *Id.*

In *Evans v. K-VA-T Food Stores, Inc.*, the plaintiff suffered an overdose when a pharmacist incorrectly mixed a prescription. No. 2:12-CV-6167, 2013 WL 1639414, at *1 (S.D.W. Va. Apr. 16, 2013); AOB29. The plaintiff's prescription was filled by the pharmacy of Food City

supermarket, and the plaintiff named the supermarket's assistant manager, asserting that he "negligently allowed the improperly filled prescription to be distributed to the Plaintiff." *Id.* Based in part on deposition testimony taken before the case was removed, however, "the defendants became convinced" the assistant manager was fraudulently joined. *Id.* at *2. The court agreed, because the evidence showed the assistant manager "had no responsibility for the execution or management of the pharmacy's professional activities." *Id.* at *4.

And, finally, in *Carter v. Hitachi Koki U.S.A., Ltd.*, the court easily found fraudulent joinder because the plaintiff, who was injured by a circular saw purchased by his employer, did not even attempt to determine which retailer sold the saw. 445 F. Supp. 2d 597, 601 (E.D. Va. 2006); AOB29. The plaintiff "assume[d]" defendant Master Tool was the correct defendant because his employer "frequently purchased power tools . . . from that retailer." *Id.* at 599. The plaintiff never actually contacted the employer "to learn the identity of the retailer that sold the saw." *Id.* Moreover, the employer's declaration established that he did not purchase the circular saw from Master Tool, and Master Tool's

records indicated Master Tool "did not sell any circular saws" during the time period at issue. *Id.*

In sum, this case is categorically unlike cases where a court could properly find fraudulent joinder. In each of Defendants' cases, the defendants had a simple, unassailable defense that could be established with total certainty—"we never serviced the power steering," "we aren't licensed to operate in that county," or "we don't sell circular saws." Here, by contrast, the factual issues and questions of state law in this case are numerous and complex. As the court in *Evans* noted, "fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand." 2013 WL 1639414, at *3. There are too many shades of gray here to permit a finding of fraudulent joinder.

### 2. The declarations are too vague to negate all liability and overlook key issues.

Examining the substance of the declarations, they fall well short of negating Piedmont's and Brabham's liability, especially when resolving all legal and factual issues in favor of the City.

First, substantial portions of the declarations may be disregarded out of hand because they are vague or conclusory. *See, e.g.*, *Evans v.*

*Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ([W]e generally consider self-serving opinions without objective corroboration not significantly probative[.]"); *Capers v. Behr Heat Transfer Sys.*, No. CIV.A. 2:10-3163-BHH, 2012 WL 2149757, at *3 (D.S.C. June 13, 2012) (rejecting "boilerplate, conclusory, and generalized" affidavits that did not identify the "source of personal knowledge.").

Piedmont asserts that it "has never engaged in a 'marketing campaign' of any kind," and Brabham likewise protests that it "has never played any role or engaged in a 'marketing campaign'" related to climate change. J.A.1546, J.A.1549. Both declarants place the phrase "marketing campaign" in scare quotes—which signal irony and uncertainty—such that neither the City nor this Court can be certain of what the declarants mean or which allegations in the Complaint they deny. The Complaint alleges "Piedmont owns and operates approximately 35 service stations branded with the 'Citgo' mark by which it *markets*, *promotes* and *advertises* its fossil fuel products to consumers in South Carolina." J.A.0147 (emphasis added). Resolving legal and factual issues in the City's favor, the Complaint at least colorably alleges that Piedmont markets its products at its gas stations, and Piedmont's declaration does

not appear to refute that allegation. This illustrates why questions of fact like the resident Defendants' marketing activities cannot be resolved on the pleadings, before any Defendant has answered and before any discovery has occurred. The City and the Court should not be left guessing about what the declarants mean by "'marketing campaign.'"

Similarly, the Court cannot accept the resident Defendants' conclusory statements that they never "played any role in any alleged disinformation campaign of the Global Climate Coalition." J.A.1546, J.A.1549. That factual assertion is at a level of generality such that it is meaningless until it can be tested through the adversarial litigation process. It does not show that the City has no chance of relief. *See Evans*, 80 F.3d at 962 ("[S]ummary judgment affidavits cannot be conclusory[.]").

Second, the declarations cannot—and do not—cover all the issues needed to negate the resident Defendants' liability. The decision in *Boyd v. Guinyard* is instructive. No. 5:18-CV-00269-JMC, 2018 WL 3322971 (D.S.C. July 6, 2018). There, a declaration established that the manufacturer of an allegedly defective pair of boots did not sell that line of boots to the retailer defendant Sears & Roebuck Co., but there was "no affidavit from . . . any Sears representative denying they sold the boots

to Plaintiff," which the court found Sears could have purchased from an indirect supplier. *Id.* at *4. The manufacturer even produced an email sent to its counsel from a Sears representative stating "[b]ottom line, we did not sell this boot in the stores," but because "[n]othing more [wa]s contained in the email," the evidence was "not persuasive to meet [the] Defendants' burden" to show recovery against Sears was impossible. *Id.*

The declarations here do not mention Standard Oil, Phillips Petroleum Company, Chevron, BP, Shell, or Citgo. Consequently, the declarations cannot rebut the City's allegations that Piedmont and Brabham should have known of the dangers of their fossil fuel products "based on information passed to them from their . . . affiliates." J.A.0187 at ¶ 35. Likewise, the declarations do not aver that Piedmont or Brabham did not sell products in South Carolina and did not advertise such products, nor that those defendants provided adequate (or any) warnings concerning their products. Thus, the declarations overlook the City's allegations that Piedmont and Brabham "failed to adequately warn any consumers or any other party of the climate effects that inevitably flow from the intended use and foreseeable misuse of their fossil fuel products." J.A.0264 at ¶ 177.

Throughout the declarations, gaps in the averments outweigh their substance. For example, Piedmont and Brabham assert that they "never conducted any research" related to climate change, but they are otherwise silent about what knowledge they had about climate change, when they received that knowledge, how they received it, and what if anything they communicated to their customers. J.A.1546, J.A.1549. Piedmont swears that it has never "participated in a meeting" of the PMAA or "taken any action on behalf of that organization."  J.A.1546. But the Complaint alleges that Piedmont has held a leadership role in the SCCPMA, which is "a division of the [PMAA]." J.A.0147 at ¶ 22(e). Piedmont's declaration says nothing about Piedmont's relationship with the SCCPMA, nor does the declaration make any representations about the relationship between the SCCPMA and the PMAA, or the interactions between the SCCPMA and other divisions or members of the PMAA. *See* J.A.1546.

Similarly, Piedmont and Brabham promise that they have never "participated in a meeting" of the Global Climate Coalition ("GCC") or "taken any action on behalf of that organization." J.A.1546; J.A.1549. But the complaint alleges that GCC "on behalf of Defendants and other fossil

43

fuel companies, funded deceptive advertising campaigns and distributed misleading material to generate public uncertainty around the climate debate," despite sharing with members its internal conclusion that "contrarian theories" skeptical of climate change "do not offer convincing arguments against the conventional model of greenhouse gas emission-induced climate change." J.A.0232–33, ¶ 116 & n.94. Piedmont's and Brabham's declarations do not purport to address what, if any, information from GCC reached them through their involvement in SCCPMA or business affiliations with direct members of GCC. Defendants' knowledge concerning both climate change and the alleged deception campaigns is highly relevant to the City's failure to warn and UTPA claims, and the declarations do not speak to those facts at all.

Further, Piedmont and Brabham state they have never "taken any action on behalf" of the PMAA and the GCC, but they say nothing about whether the PMAA and the GCC have taken action *on behalf of Piedmont and Brabham*. J.A.1546, J.A.1549. The declarations completely miss one of the major allegations in the Complaint—that industry associations and front groups engaged in a campaign of misinformation "[a]cting on behalf of and under the supervision and/or control of Defendants."

44

J.A.0181 at ¶ 33. Thus, Defendants are unsuccessful in attempting to disclaim the connection between the non-diverse defendants and their industry associations and business affiliates named in the Compliant. *See* AOB21–27.

In sum, even reading the declarations generously—which the Court cannot, under the fraudulent joinder standard—the declarations simply do not cover the topics necessary to negate all liability. Importantly, the declarants do not state what records they reviewed or who they consulted to ascertain Piedmont's and Brabham's actions during all relevant time periods (in Brabham's case, its corporate history stretches back over nearly a century). *See Gosnell v. Am. Optical Corp.*, No. 2:10-CV-00994, 2011 WL 2214192, at *4–5 (S.D.W. Va. June 7, 2011) (finding that the scope of Defendant's affidavits was too limited to meet the "no possibility" standard where they performed quick searches of internal business records for only part of the relevant time period); *cf., e.g.*, *Goode v. STS Loan & Mgmt., Inc.*, No. CIV.A. DKC 2004-0999, 2005 WL 106492, at *2 (D. Md. Jan. 14, 2005) ("Rule 56(e) requires more than a bald assertion that the affiant has 'personal knowledge' and is 'competent to testify.' It requires that the affiant 'show affirmatively that [she] is competent to

testify to the matters stated therein.'" (quoting Fed. R. Civ. P. 56(e)));
*Maxtena, Inc. v. Marks*, No. CIV.A. DKC 11-0945, 2012 WL 113386, at *4
(D. Md. Jan. 12, 2012) (noting that an affirmative showing of competence
to testify "may require more than the traditional litany of a declarant's
personal knowledge and competence to testify" (cleaned up)). The issues
raised in the declarations can be resolved only through discovery.

### 3.    The City absolutely disputes the factual issues raised in Defendants' declarations.

Defendants repeatedly refer to an "undisputed" record and their
"undisputed" declarations. This is misleading and wrong. Just because
the City has not filed its own declarations does not mean Defendants
have established an "undisputed" record.

As set forth above, the City unequivocally disputes the declarations.
The City disputes, for instance, that Piedmont "has never engaged in a
'marketing campaign' of any kind." *See* J.A.1546. Defendants harp on
how their declarations are "unrebutted," but the City has no obligation
to prove its case on a jurisdictional motion, especially as to the resident
Defendants' internal knowledge and activities, before conducting any
discovery. *See McKean v. Wal-Mart Stores, Inc.*, No. Civ.A.2:05 0176,
2005 WL 1785260, at *3 (S.D.W. Va. July 26, 2005) (declining to "afford

greater weight to [Defendant's] affidavit than plaintiffs' complaint" where "plaintiffs filed no affidavit or other evidence to rebut [Defendant's] statement", and thus rejecting fraudulent joinder). The City has no idea what investigation the declarants conducted to reach their conclusions, and has had no opportunity to test them.

Significantly, in many cases where a court has found fraudulent joinder, the plaintiff had the benefit of discovery. Defendants lean heavily on *Boss* to argue that the Court "cannot resolve the facts in the Plaintiffs' favor" when the Defendants' declarations are "undisputed" by the Plaintiffs. AOB18 (quoting *Boss*, 228 F. App'x at 336). But in *Boss*, the defendants removed only after ten months of discovery in state court. *Id.* at 333–34. This Court specifically noted that the plaintiff "could have sought further discovery" even after removal to support his arguments against fraudulent joinder, but "made no attempt" to rebut the defendant's affidavit. *Id.* at 336. Thus, this Court credited the affidavits, which were truly "undisputed" because the Plaintiff did not attempt to use discovery mechanisms available to him. *Id.* Similarly in *Evans*, the district court found fraudulent joinder based on "uncontroverted" facts established by pre-removal written discovery responses and deposition

testimony. 2013 WL 1639414, at *1–2, *4. The one-page declarations here, which provide no information concerning how their conclusions were reached, are different in kind.

The City cannot meaningfully rebut the declarations without discovery. The resident Defendants' declarations speak, in very general terms, about conduct and knowledge entirely proprietary to Piedmont and Brabham, namely what its employees and agents knew and did in relation to trade groups and statements to customers. These matters must be developed through discovery and trial in state court.

## D. The district court considered Defendants' declarations and did not err in declining to decide contested issues.

Defendants misrepresent the record in saying that the district court "declined even to consider" their declarations. AOB11. The district court *did* consider the declarations but properly recognized that "contested facts" remain at issue. J.A.1561–1562.

The court below explicitly acknowledged that it was "not bound by the allegations of the pleadings, but [could] instead consider the entire record, and determine the basis of joinder by any means available." J.A.1561 (quoting *Mayes v. Rapoport,* 198 F.3d 457, 462 (4th Cir. 1999)). But because the declarations clearly fall short of negating the resident

48

Defendants' liability, the court appropriately determined that contested issues remained and thus a finding of fraudulent joinder was improper.

Contrary to what Defendants say, Piedmont's connection to the GCC[8] was not the "only" reason why the district court found that Defendants failed to establish fraudulent joinder. AOB31. Rather, the district court considered, and cited to, the City's allegations "that Piedmont and Brabham participated in the disinformation campaign that caused the City's injuries." J.A.1561 (citing Dkt. No. 1-2, ¶¶ 20, 22). The district court referenced Piedmont's connection to the GCC as an "example" of the issues raised in the City's complaint. J.A.1561–1562.

At the same time, the district court considered, and cited to, Piedmont's and Brabham's declarations "stating that they have not played any role in any marketing campaign relating to greenhouse gases, global warming, or the science of climate change." J.A.1561 (citing Dkt.

---

[8] Defendants argue that Piedmont cannot have a connection with the GCC because the Complaint alleged Piedmont's CEO served as the Board Secretary of the SCCPMA at the time of filing while the GCC disbanded in or around 2001. AOB31. However, Defendants do not assert that Piedmont never received information from the GCC, nor that the GCC never acted on behalf of Piedmont. *See* J.A.0181 at ¶ 33 (alleging GCC acted on behalf of and distributed information to Defendants). Drawing all inferences in favor of the City, Piedmont's involvement with the SCCMPA only *bolsters* a plausible connection to the GCC; it does not undermine that connection. In any event, Piedmont's connection to the GCC is only one of the many contested issues of fact that make a finding of fraudulent joinder inappropriate.

Nos. 112-1; 112-2). The district court even generously indicated that Piedmont's declaration "refutes" the City's allegation about the connection between Piedmont and the GCC, but declined to credit that statement as conclusively settling any factual issue. J.A.1562. After considering the City's Complaint and the two declarations as a whole, the district court properly concluded that "in light of the allegations possibly tying Brabham and Piedmont to the disinformation campaign that the City alleges causes its harm . . . Defendants have not met their heavy burden to show fraudulent joinder" after "[r]esolving all issues of fact and law in the City's favor." *See* J.A.1561–1562.

The district court's reasoning properly applied this Court's holding that "a jurisdictional inquiry is not the appropriate stage of litigation" to resolve "uncertain questions of law and fact." *Hartley*, 187 F.3d at 425. The court noted it could not "act as a fact finder in deciding jurisdictional questions," recognizing that the complex and contested issues in this case must be resolved through the adversarial process. *See* J.A.1562.[9]

---

[9] Defendants fault the district court for its "cf." citation to *Stoney Marine Int'l Ltd. v. Arthur J. Gallagher & Co.*, No. 2:16-CV-1154-DCN, 2016 WL 7334862, at *3 (D.S.C. Dec. 19, 2016), which notes that "proximate cause is ordinarily one of fact for the jury." AOB34. This citation was entirely appropriate because Defendants contested proximate cause as part of their fraudulent joinder arguments in their notice of

### III.    The District Court Correctly Found No Basis for Federal Officer Removal.

To remove a case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), "a private defendant must show: (1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority." *Baltimore,* 31 F.4th at 228 (cleaned up). This Court, and numerous others, have already held that Defendants cannot establish jurisdiction under the federal officer removal statute. *Baltimore*, 31 F.4th at 228; *see also supra* n.1. Defendants argue that additional evidence and a novel legal theory not considered in *Baltimore* warrant revisiting this issue. The district court rejected these arguments, and this Court should affirm. As the district court found, Defendants' new evidence and new argument do not satisfy 28 U.S.C. § 1442(a)(1) because they still do not show that the tortious conduct charged in the City's Complaint "relate[s] to" anything Defendants did under federal subjection or control. J.A.1558. District courts in Maryland, New Jersey,

---

removal, J.A.0128 at ¶ 205, although Defendants prudently appear to have abandoned that argument.

51

and Hawaiʻi have all considered the same evidence and have likewise held that this evidence does not satisfy the statute's requirements.[10]

Defendants' new materials do not establish the required nexus between federal authority and the City's claims, in part because it relies on the same misconstruction of the City's complaint that was fatal in *Baltimore*. AOB10. In *Baltimore*, this Court determined that "fossil-fuel production" was "not the source of tort liability" alleged in Baltimore's complaint. *Baltimore*, 31 F.4th at 233. Rather, as here, Baltimore's complaint "clearly [sought] to challenge the promotion and sale of fossil-fuel products without warning and abetted by a sophisticated disinformation campaign." *Id.* The Court thus concluded that any federal involvement in Defendants' production and sale of fossil fuels was insufficiently related to that "source of tort liability." *Id.*

Defendants' "expanded factual record" just provides more information about their *production* of fossil fuels. Nowhere in their brief

---

[10] *See Annapolis*, 2022 WL 4548226, at *7 ("This expanded factual record does nothing to address the legal deficiency . . . identified by this Court and the Fourth Circuit . . . ."); *Hoboken*, 558 F. Supp. 3d at 208 ("Four circuits have concluded that Defendants could not remove based on the federal officer removal statute," and "this new information likely would not change any of the prior circuit analyses."), *aff'd* 45 F.4th 699 (3d Cir. 2022); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022) ("Defendants' new factual points do not change the outcome."), *aff'ing Honolulu*, 2021 WL 531237.

do Defendants mention evidence of "promotion and sale of fossil-fuel products without warning" or a "sophisticated disinformation campaign." *See* J.A.1557 (quoting *Baltimore*, 31 F.4th at 232–34). The district court below correctly determined that none of the additional details demonstrate a sufficient connection between federal authority and Defendants' alleged deceptive conduct. Because all of the new information is related, instead, to "Defendants' production of oil and gas", from supplying the military with fuel to operating a Navy-controlled petroleum reserve[11], the district court was right to identify Defendants' materials as "additional details on old[] theories." J.A.1558. Under *Baltimore*, those old theories do not support removal.

In any case, Defendants do not attempt to explain any of the huge volume of new materials they rely on, and it is not this Court's job to comb the record for support. *See Timpson v. Anderson Cnty. Disabilities and Special Needs Bd.*, 31 F.4th 238, 250 (4th Cir. 2022) (stating that "sparse record cites offer little guidance in our review" and "'judges are not like

---

[11] The Plaintiffs-Appellees' briefing in the consolidated *Anne Arundel* and *Annapolis* appeals currently pending before this court contains a more detailed accounting of the new evidence advanced by Defendants and why these additional details fail to support federal officer removal.

pigs, hunting for truffles buried in the record" (alterations omitted) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *see also Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1007 n.1 (9th Cir. 2000). In less than two pages of their opening brief, Defendants reduce hundreds of pages of material on multiple complex topics to bullet points with no analysis. AOB37–38. They then say, without explanation, that unlike "the limited record" in *Baltimore*, "the specific evidence here establishes a connection" between their conduct under federal direction and the City's claims. AOB39. The Court is not obliged to credit Defendants' conclusory assertion that somewhere in those pages it will find evidence to reverse the district court, and is not obliged to make Defendants' arguments for them.

Finally, Defendants mention a wholly unsupported new argument, which diverges from settled law. They say the federal officer removal statute's "for or relating to" element is satisfied because actions they took under federal supervision relate to the City's *injuries*, even if they have nothing to do with the wrongful conduct alleged in the Complaint that would give rise to liability. As an initial matter, such a "perfunctory and undeveloped argument[] [is] waived" and the Court need not consider it.

54

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) (declining to review an issue advanced in "less than a page of briefing" and only supported by out-of-jurisdiction authority).

Even if the Court considers Defendants' inadequately presented argument, it will find it meritless. Their argument ignores the Supreme Court's clear holding that, to seek removal under § 1442(a)(1), Defendants "must show a nexus . . . between the *charged conduct* and asserted official authority." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (emphasis added). The federal officer removal statute requires a relationship between Defendants' allegedly wrongful conduct and actions it took at the government's behest, not a relationship between the City's injuries and some unrelated activity Defendants engaged in with the government. The Court must decline to entertain Defendants' unsupported theory and should affirm the district court's rejection of federal officer removal.

## IV. The District Court Correctly Found that Defendants' First Amendment Defenses Do Not Satisfy *Grable.*

Defendant's final Hail Mary argument under the *Grable* doctrine also fails. The *Grable* doctrine applies to only the "slim category" of cases where "a federal issue is: '(1) necessarily raised, (2) actually disputed, (3)

substantial, *and* (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Baltimore*, 31 F.4th at 208–09 (first quoting *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019); and then quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "Federal courts must be 'cautious' in exercising this form of jurisdiction because it lies at the 'outer reaches of § 1331.'" *Id.* at 208 (quoting *Burrell*, 918 F.3d at 380). Notably, "[e]very court to consider the question has rejected the oil-industry defendants' arguments for *Grable* jurisdiction." *Massachusetts*, 462 F. Supp. 3d at 45.

On appeal, Defendants fail to even state *Grable*'s four-part test and do not attempt to argue that they satisfy its requirements. Defendants' sole argument for applying *Grable* is utterly unsupported. They contend that the First Amendment injects "affirmative federal constitutional elements" into the City's squarely state-law claims, which a court will be required to consider. *See* AOB39. But, as the district court correctly noted, the "clear weight of authority" rejects this theory, because the First Amendment does not add *prima facie* elements to state law claims and would at most provide a federal defense here. J.A.1560. Each court to consider Defendants' First-Amendment-*Grable* theory in an analogous

case—the Third Circuit in *Hoboken*, as well as the district courts in *Oakland*, *Delaware*, *Hoboken*, *Annapolis*, and *Connecticut*—has found it meritless.[12]

The Fourth Circuit has repeatedly held that although "[t]he First Amendment . . . limits the state remedies available to a defamation plaintiff," "[a] defamation claim is, at its root, a state law tort claim." *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 691 (4th Cir. 2003). The constitutional protections recognized in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny are just that: immunity protections afforded to certain defendants by the First Amendment. *See e.g.*, *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008); *Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir. 1992). The case does not add *prima facie* federal elements to state-law claims. The First Amendment

---

[12] *Hoboken*, 45 F.4th at 709 ("[T]hough the First Amendment limits state laws that touch speech, those limits do not extend federal jurisdiction to every such claim. State courts routinely hear libel, slander and misrepresentation cases involving matters of public concern. The claims here arise under state law, and their elements do not require resolving substantial, disputed federal questions."), *aff'ing Hoboken*, 558 F. Supp. 3d at 205 & *Delaware*, 578 F. Supp. 3d at 622–24; *Oakland*, 2022 WL 14151421, at *5; *Annapolis*, 2022 WL 4548226, at *9–10; *Connecticut*, 2021 WL 2389739, at *1010 ("ExxonMobil fails to cite any authority for the proposition that these limits apply to consumer protection law claims, nor for the proposition that these limits would apply to such claims in a manner that would embed any First Amendment issues within state law claims—as opposed to providing ExxonMobil with a federal defense."), *aff'd*, 83 F.4th 122.

prohibits state courts from enforcing certain defamation judgments that are otherwise meritorious under state law, in the same way that the Fourteenth Amendment prohibits state courts from enforcing racially restrictive covenants attached to real property. *See Shelley v. Kraemer*, 334 U.S. 1, 22 (1948). Neither constitutional provision converts state law rights and remedies into federal ones, much less provides federal removal jurisdiction over those claims. *See, e.g.*, *Schifanelli v. Jourdak*, 2021 WL 100712, at *3–4 (D. Md. Jan. 12, 2021) (rejecting argument that state law recognition of First Amendment preclusion of certain defamation claims created federal question jurisdiction).

Even where a complaint raising state law claims references the First Amendment and the claims *could* be proven on a theory involving First Amendment rights—which the City's complaint does not—those claims still do not necessarily raise substantial federal questions. *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816–19 (4th Cir. 2004) (holding that South Carolina state law claims did not raise substantial federal questions as plaintiff was not required to prove a First Amendment violation to succeed on claims under two of three possible theories, but the second theory "arguably involve[d] the resolution of a substantial

question of federal law"). "[I]f the plaintiff can support [its] claim with even one theory that does not call for an interpretation of federal law, [its] claim does not 'arise under' federal law for purposes of § 1331," *id.* at 817, and none of the City's claims require any proof related to the First Amendment.

Finally, Defendants do not support their argument that the City's status as a government entity necessitates federal jurisdiction based on the First Amendment, and courts have repeatedly rejected that reasoning. For instance, the opinion in *California v. Sky Tag, Inc.* explains in a similar context why that is not a basis for jurisdiction. No. CV-11-8638-ABC-PLA, 2011 WL 13223655 (C.D. Cal. Nov. 29, 2011). There, the Los Angeles City Attorney brought state-law claims to compel an advertising company to take down large vinyl signs it had illegally wrapped around buildings in the city. *Id.* at *1. The defendants argued the case was removable under *Grable* because the city's action would impose a prior restraint on their speech, but the court rejected this theory as "no different than other First Amendment defenses that courts have repeatedly found did not support removal jurisdiction." *Id.* at *3 (collecting cases).

Against that backdrop, Defendants unsurprisingly do not cite a single case where a court has upheld federal-question jurisdiction based on a defendant's anticipated First Amendment defenses. Neither of the defamation cases Defendants cite were ever in federal district court—they were litigated entirely in their respective state court systems until being taken up by the Supreme Court. *See Sullivan*, 376 U.S. 254 (reviewing decision by the Supreme Court of Alabama); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) (reviewing decision by the Pennsylvania Supreme Court). There is no support at all for Defendants' theory.

This court too should join every other court that has considered Defendants' argument, decline to "deviate from the clear weight of authority," and affirm remand to state court. J.A.1560.

## V.     Defendants Cannot Preserve Arguments by Mere Mention.

Defendants attempt to preserve a laundry list of additional arguments, all of which they concede are foreclosed by this court's precedent. "A party waives an argument by failing to present it in its opening brief or by failing to develop its argument," however, "even if its brief takes a passing shot at the issue." *Grayson O Co.*, 856 F.3d at 316

(cleaned up). Defendants' brief here does not meet even the bare minimum requirements to preserve their arguments.

Defendants incorporate by reference numerous jurisdictional theories asserted in their Notice of Removal, but fail to discuss those legal issues in their opening brief, and instead simply list them. As such, Defendants have failed to preserve those additional issues. *See Racklin v. Zeta Global Corp.*, No. 22-2077, 2023 WL 5165281, at *5 n.7 (4th Cir. Aug. 11, 2023) (issue mentioned in opening brief waived where appellant made "no attempt to set forth the relevant standard . . . or include any legal discussion").

## VI.    Oral Argument Is Unnecessary.

Defendants request oral argument based on three issues not yet addressed by this Court, but all three will soon be "authoritatively decided" by this Court or are "adequately presented in the briefs." *See* Fed. R. App. P. 34(a)(2). Oral argument would not "significantly aid[]" the Court in rendering a decision, and is unnecessary. *Id.*; Local Rule 34.2.

As to two of their arguments, Defendants have stated that this Court's decision in *Anne Arundel* and *Annapolis* will be dispositive of both federal officer removal and *Grable* jurisdiction. AOB13. Given that

this court has already rejected substantially similar arguments in *Baltimore*, and will consider identical theories at oral argument in *Anne Arundel* and *Annapolis*, the federal officer removal and *Grable* issues should be decided on the papers. The only remaining issue, fraudulent joinder, is not complex, and the record is adequate to support a decision. *See Tabor v. Freightliner of Cleveland, LLC*, 388 F. App'x 321, 323 (4th Cir. 2010). As such, this court can and should resolve this appeal without oral argument.

Dated:  October 30, 2023

Respectfully Submitted,

Wilbur Johnson
  Corporation Counsel
Julia Copeland
Melissa Cruthirds
  Assistants Corporation Counsel
Office of the Corporation
Counsel City of Charleston
50 Broad Street,
Charleston, SC 29401
Email: wjohnson@ycrlaw.com
copelandj@charleston-sc.gov
cruthirdsm@charleston-sc.gov

Joseph P. Griffith, Jr.
Joe Griffith Law Firm, LLC
946 Johnnie Dodds Blvd.
Mt. Pleasant, SC 29464
Tel: (843) 225-5563
Email: joegriffithjr@hotmail.com

*Counsel for Plaintiff-Appellee*

Victor M. Sher
Matthew K. Edling
Martin D. Quiñones
Sher Edling LLP
100 Montgomery St., Suite 1410
San Francisco, CA 94104
(628) 231-2500
Email: vic@sheredling.com
matt@sheredling.com
marty@sheredling.com

*Counsel for Plaintiff-Appellee*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,996 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

*/s/ Victor M. Sher*
Victor M. Sher
SHER EDLING LLP

*Counsel for Plaintiff-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Victor M. Sher*
Victor M. Sher
SHER EDLING LLP

*Counsel for Plaintiff-Appellee*

# <u>STATUTORY ADDENDUM</u>

Pursuant to Fourth Circuit Local Rule 28(b) and Federal Rule of Appellate Procedure 28(f), this addendum includes pertinent statutes, reproduced verbatim:

**Statutes**          **Page**

28 U.S.C. § 1331 .................................................................... 7, 10

28 U.S.C. § 1442(a) ............................................... 5, 7, 12, 51, 55

**28 U.S.C. § 1331. Federal Question**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 1442. Federal officers or agencies sued or prosecuted**

**(a)** A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

**(2)** A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

**(3)** Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

**(4)** Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

. . .